UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUBURN TRACE, LTD.                              Chapter 11

      Debtor.                                   Case No.:  15-10317-PGH

_____/

## **AUBURN TRACE, LTD.'S PLAN OF REORGANIZATION**

April 6, 2015

Respectfully submitted,

Bradley S. Shraiberg, Esquire
Lenore M. Rosetto Parr, Esquire
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email:  lrosettoparr@sfl-pa.com

**ATTORNEYS FOR DEBTOR**

# DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Auburn Trace, Ltd. (the "**Debtor**") hereby proposes the following plan of reorganization under section 1121(b) of the Code:

## ARTICLE I

## <u>DEFINITIONS</u>

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"***Actions***" shall mean all actions that a trustee or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

"***Administrative Claim***" shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

"***Administrative Bar Date***" shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

"***Administrative Claimant***" shall mean the holder of an Administrative Claim.

"***Allowed Amount***" shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

"***Allowed Claim(s)***" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"***Allowed General Unsecured Claim***" shall mean an Allowed Claim, not entitled to priority, which arose or which is deemed to have arisen prior to the filing of the Petition commencing this Case and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Case pursuant to an agreement approved by the Bankruptcy Court.

"***Allowed Priority Tax Claim***" shall mean an Allowed Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"***Allowed Secured Claim***" shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

"***Article***" shall mean one of the numbered Articles of the Plan.

"***Assets***" shall mean all of the right, title, and interest of the Debtor in and to Property of the Estate, whether tangible or intangible.

"***Avoidance Action(s)***" shall mean the Actions pursuant to chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542–553 of the Code.

"***Ballot***" shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims in each Impaired Class of Claims that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

"***Ballot Deadline***" shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

"***Business Day***" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Florida are authorized or required to close.

"***Case***" shall mean this Chapter 11 Case No. 15-10317-PGH, pending before the United States Bankruptcy Court for the Southern District of Florida.

"***Cash***" shall mean legal tender of the United States of America.

"***Claim(s)***" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"*Claims Bar Date*" shall mean **May 11, 2015**, the last date for creditors, except a governmental unit, to file Proofs of Claim in the Case.

"*Class*" shall mean a group of Claims classified together pursuant to Article IV of the Plan.

"*Code*" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"*Confirmation*" shall mean the entry by the Court of the Confirmation Order.

"*Confirmation Date*" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"*Confirmation Hearing*" shall mean the date this Court schedules the hearing to consider confirmation of the Plan.

"*Confirmation Order*" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in a form and substance satisfactory to the Proponent.

"*Court*" **and/or** *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"*Creditor*" shall mean any Person holding a Claim, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"*Debtor*" shall mean Auburn Trace, Ltd.

"*Disputed Claim*" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"*Disputed Claims Reserve*" shall have the meaning set forth in Section 5.03 of the Plan.

"*Distribution(s)*" shall mean funds to be paid to holders of Claims pursuant to Article II, Article IV and Article V of the Plan.

"***Distribution Date***" shall mean the dates upon which Distributions may be made pursuant to Article V of the Plan.

"***Docket***" shall mean the docket maintained in this Case by the Clerk of the Court.

"***Effective Date***" shall mean the fifteenth (15) day after the entry of the Confirmation Order.   In the event the Confirmation Order is stayed pending appeal, the Effective Date shall be the later of fifteen (15) days after the entry of an Order either lifting the stay or affirming the Confirmation Order.

"***Estate***" and/or "***Property of the Estate***" shall mean the Estate created in this Case pursuant to section 541 of the Code.

"***Equity Interest" or "Interest***" shall mean any ownership or equity interest in the Debtor, including without limitation, interests in any share of preferred stock, common stock or other instrument evidencing ownership interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

"***Executory Contract***" shall mean a contract or unexpired lease to which the Debtor is a party and that is executory within the meaning of section 365 of the Code.

"***Filing Date***" shall mean January 7, 2015, the date on which the Debtor commenced this Case by filing a voluntary petition under Chapter 11 of the Code.

"***Final Order***" shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

"***General Unsecured Claim***" shall mean any Claim against the estate of the Debtor other than an Administrative Claim, a Secured Claim, a Secured Taxing Authority Claim, an Unsecured Priority Tax Claim, or a Priority Claim.

"***Governmental Claims Bar Date***" shall mean **July 6, 2015**, the last date for governmental unit claimants to file Proofs of Claim in the Case.

"***Impaired***" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

"***Initial Distribution Date***" shall be the Effective Date, unless otherwise provided for in

the Plan.

"***Late Filed Claim***" shall mean a Claim filed after the Claims Bar Date or Governmental Claims Bar Date, whichever is applicable.

"***Lien(s)***" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

"***Net Annual Profits***" shall mean the Debtor's net earnings to be calculated on December 31st of each year by taking the Debtor's gross annual revenues and adjusting for the cost of doing business, depreciation, interest, taxes and expenses. The Debtor's annual expenses specifically include repairs, maintenance, taxes, insurance, and any and all necessary and ordinary operating expenses not aforementioned and all payments paid pursuant to Plan (including Administrative Claimholders, Priority Tax Claimants, and holders of Claims under Class 1-5).

"***New Value Payment***" shall mean the funding of the initial Plan payments to be paid within thirty (30) days of the Effective Date to be provided by Brian J. Hinners and Auburn Trace Joint Venture, or their assigns. The Debtor estimates the New Value Payment will total approximately $206,216.54, which is comprised as follows: (i) the initial payment to the holder of the Allowed Priority Tax Claims that the Debtor estimates totals $7.67; (ii) the initial payments to the holders of Allowed Secured Tax Claims in Class that the Debtor estimates totals $7,809.96 ($4,077.83 toward 2014 real estate taxes, $84.10 toward 2014 tangible property taxes; and $3,648.03 toward 2015 real estate taxes); (iii) the initial payment to the holder of the Allowed Class 2 Secured Claim of Iberia Bank that the Debtor estimates totals $14,951.35; (iv) the initial payment to the holder of the Allowed Class 3 Secured Claim of The City of Delray Beach in the amount of $149,243.50; (v) the initial payment to the holder of the Allowed Class 4 Secured Claim of US Small Business Administration that the Debtor estimates totals $706.61; and (vi) the initial payment to the holder of the Allowed Class 5 General Unsecured Claims that select Election B that the Debtor projects may total approximately $26,994.91. For purposes of the Debtor's projection as it relates to the estimated amount of the initial Plan payment to be paid to holders of Allowed Class 5 General Unsecured Claims that select Election B, the Debtor estimated 50% of the Allowed Class 5 Claims would select Election A and the remaining 50% would select Election B. The Debtor estimates this initial Plan payments to the holders of Allowed Class 5 Claims that select Option B may range from $0 to $26,994.91, which means the Debtor estimates the New Value Payment may range from $192,719.09 to $219,714.

"***Person***" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"***Petition Date***" shall mean the Filing Date.

"***Plan***" shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

{1930/000/00279764}                                           6

"***Plan Documents***" shall mean the documents to be filed as a part of the Plan Supplement, if needed.

"***Post-Petition Interest***" shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

"***Prepetition***" shall mean prior to the Petition Date.

"***Priority Claim***" shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

"***Priority Tax Claim***" shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"***Professional***" shall mean any professional employed in this Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

"***Property of the Estate***" shall mean the property defined in section 541 of the Code.

"***Proponent***" shall mean the Debtor.

"***Real Property***" shall mean the real estate located at 625 Auburn Circle W., Delray Beach, Florida 33444.

"***Rejected Contract***" shall mean an Executory Contract that is rejected at any time during this Case or pursuant to Article VI of the Plan.

"***Rejection Claim***" shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

"***Reorganized Debtor***" shall mean Auburn Trace, Ltd., as reorganized, on or after the Effective Date.

"***Rules***" shall mean the Federal Rules of Bankruptcy Procedure.

"***Schedules***" or "***Amended Schedules***" shall mean the Schedules and Amended Schedules of assets and liabilities filed or which may be filed by the Debtor with the Court in this Case.

"***Section***" shall mean a numbered subsection of any Article of the Plan.

"***Secured Claim(s)***" shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value

of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"***Secured Creditor(s)***" shall mean the holder of a Secured Claim.

"***Substantial Consummation***" shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

"***Unimpaired***" shall mean an Allowed Claim that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

"***U.S. Trustee's Fees***" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

"***Rules of Construction and Interpretation***"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b)  Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS <u>AND UNITED STATES TRUSTEE'S FEES</u>

The following Allowed Administrative Claims, Allowed Priority Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

**2.01    <u>Allowed Administrative Claims</u>**

**a.    Ordinary Course Claims.**

Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in full and performed by the Reorganized Debtor in the ordinary course of business consistent with past practices and in accordance with the terms and

subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### b.    Professional Fees and Expense Claims.

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees and Expenses Claims**").  All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses.  The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses. SFL estimates its total outstanding fees and costs through Confirmation will total approximately $20,000, which shall be paid on or before Confirmation, unless otherwise agreed to by SFL.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 of the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

The time for filing objections to applications for allowance and payment of Professional Fees and Expenses, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set forth in the Confirmation Order or other order of the Court.

Notwithstanding anything herein to the contrary, all Professional Fees and Expenses that are awarded by the Court shall become Allowed Administrative Claims and shall be paid in full in Cash on the later of the Effective Date of the Plan, the date on which such Professional Fees and Expense Claim becomes an Allowed Administrative Claim by Final Order of the Court or as soon thereafter as is reasonably practicable.

### 2.02    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive deferred cash payments over a period not to exceed five years following the Order for Relief, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest, except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment.  Prior to the Effective Date, the Debtor shall have the right, in its sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature. The Debtor estimates the amount of Florida Department of Revenue's Allowed Priority Tax Claim is approximately $367.92.

### 2.03    United States Trustee's Fees.

The Reorganized Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) through Confirmation on the Effective Date.  The Reorganized

Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

For purposes of this Plan, the Classes of Claims against or in the Debtor shall be as follows:

| **Class** | **Description** | **Status** | **Voting Status** |
|---|---|---|---|
| Class 1 | Allowed Secured Tax Claims | Impaired | Yes |
| Class 2 | Allowed Secured Claim of Iberia Bank | Impaired | Yes |
| Class 3 | Allowed Secured Claim of The City of Delray Beach | Unimpaired | No.  Deemed Accepted. |
| Class 4 | Allowed Secured Claim of US Small Business Administration | Impaired | Yes |
| Class 5 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 6 | Allowed Equity Interests | Impaired | No.  Deemed Rejected. |

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS

### 4.01    Class 1 - Allowed Secured Tax Claims

(a)    Description.    Class 1 consists of the Allowed Secured Tax Claims on the Real Property in the amount of approximately $16,019.49 (POC No. 7) and $135,967.32 (POC No. 6) for 2014 and $135,967.32 in 2015; and the 2014 tangible personal property Allowed Secured Tax Claims in the amount of $3,134.46.  The Debtor estimates the value of the Real Property ranges between $9,300,000 and $10,700,000.

(b)    Treatment.    Except to the extent that the holders of the Allowed Secured Tax Claims have been paid by the Debtor or some other party prior to the Effective Date or agrees to a different treatment, the Class 1 Claimholders shall be paid 100% of the Allowed Amount of the Claim.  The Class 1 Claimholders shall receive equal monthly payments, with interest at the statutory rate, over a period not to exceed five (5) years from the Petition Date, in accordance with 11 U.S.C. § 1129(a)(9)(D).  In addition to the foregoing monthly payments, the Class 1

Claimholders shall receive an annual payment in the amount equal to the Debtor's Net Annual Profits on January 15th of each year until the Allowed Class 1 Claims are paid in full.

(c)     Impairment.    The Class 1 Claims are Impaired and the Class 1 Claimholders are entitled to vote to accept or reject the Plan.

### 4.02   Class 2 - Allowed Secured Claim of Iberia Bank

(a)     Description.    Class 2 consists of the Allowed Secured Claim of Iberia Bank as it relates to the first position mortgage on the Real Property in the amount of $4,221,557.73 (Acct. No. 752147203101).  This loan was formerly serviced by Orion Bank.  The Debtor estimates the value of the Real Property ranges between $9,300,000 and $10,700,000.

(b)     Treatment.  Except to the extent that the holder of the Allowed Class 2 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of the Allowed Class 2 Claim, the Debtor shall pay Iberia Bank as follows:

> (i)    Commencing on the Effective Date, or as soon thereafter as is reasonably practicable, for a period of twelve (12) months, the Debtor shall pay interest only monthly payments to Iberia Bank at a fixed interest rate based at 1 percentage point above the current Prime Rate as published in the Wall Street Journal (3.25% + 1%), amortized over thirty (30) years.

> (ii)   Upon completion of the interest only payments described above, the Debtor shall make equal principal and interest monthly payments for a period of four (4) years at a fixed interest rate based at 1 percentage point above the current Prime Rate as published in the Wall Street Journal (3.25% + 1%), amortized over thirty (30) years.

> (iii)   In addition to the foregoing monthly payments, the Class 2 Claimholder shall receive an annual payment in the amount equal to the Debtor's Net Annual Profits, less the amounts paid to the Class 1 Claimholder, on January 15th of each year until the Allowed Class 2 Claim is paid in full.

> (iv)  To the extent the Class 2 Claim is not paid in full based on the payments referenced in the preceding paragraphs, the entire outstanding principal balance, together with accrued, but unpaid interest, shall be due and payable on the fifth (5th) annual anniversary of the Effective Date.

The Debtor will not pay default rate interest or any penalties resulting from the bankruptcy filing.  The Debtor will not compensate the holder of the Allowed Class 2 Claim for any damages incurred as a result of any reasonable reliance by such holder on any contractual provision or applicable law that entitles the holder of such claim to receive accelerated payment of such claim after the occurrence of a default.

During the life of the Plan, the Debtor shall continue to maintain insurance and fund taxes on the Real Property.  There shall be no prepayment penalty on the aforementioned payments.

Iberia Bank shall retain any and all Liens on the Debtor's Real Property and other rights until such time as the proposed payments herein have been satisfied.  In addition to retaining said Liens, Iberia Bank shall be granted a Lien on the Allowed Equity Interests retained by Auburn Trace Joint Venture and Brian J. Hinners.  Upon completion of the payments described herein, Iberia Bank shall release its Liens on all property retained by the Debtor, including the Real Property, and Iberia Bank shall no longer have a Lien on such Allowed Equity Interests.  Within thirty (30) days of completion of the aforementioned payments, Iberia Bank shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Liens in favor of Iberia Bank against the Debtor that are encumbering any assets of the Debtor.

(c)     <u>Impairment</u>.    The Class 2 Claim is Impaired and the Class 2 Claimholder is entitled to vote to accept or reject the Plan.

### 4.03    Class 3 - Allowed Secured Claim of The City of Delray Beach

(a)     <u>Description</u>.    Class 3 consists of the Allowed Secured Claim of The City of Delray Beach as it relates to the second position mortgage on the Real Property in the amount of $4,231,816.22.  The Debtor estimates the value of the Real Property ranges between $9,300,000 and $10,700,000.

(b)     <u>Treatment</u>.    Except to the extent that the holder of the Allowed Class 3 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of the Allowed Class 3 Claim, upon the Effective Date, or as soon thereafter as is reasonably practicable, Auburn Trace Joint Venture and Brian J. Hinner's, or their assigns, as part of their New Value Payment, shall make a lump sum payment in the amount of $149,243.50 to the Allowed Class 3 Claimholder, which amount represents the Prepetition cure amount in default.  In addition, the maturity date of the Allowed Class 3 Claim shall be reinstated as such maturity existed before such default; the Debtor shall compensate the Allowed Class 3 Claimholder for any damages incurred as a result of any reasonable reliance by the Allowed Class 3 Claimholder on such contractual provision or such applicable law; and the Confirmation of the Debtor's Plan shall otherwise leave the holder of the Allowed Class 3 Claim with its legal, equitable and contractual rights unaltered.  To the extent any portion of the Allowed Class 3 Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), the Debtor shall compensate the holder of the Allowed Class 3 Claim for any actual pecuniary loss incurred by such holder as a result of such failure.

In addition to the foregoing, the Class 3 Claimholder shall receive an annual payment in the amount equal to the Debtor's Net Annual Profits, less the amounts paid to the Class 1 and Class 2 Claimholders, on January 15th of each year until the Allowed Class 3 Claim is paid in full.

During the life of the Plan, the Debtor shall continue to maintain insurance and fund taxes on the Real Property.  The City of Delray Beach shall retain any and all Liens on the Real Property and other rights until such time as the proposed payments herein have been satisfied.  Upon

completion of the payments described herein, The City of Delray Beach shall release its Liens on all property retained by the Debtor, including the Real Property.  Within thirty (30) days of completion of the aforementioned payments, The City of Delray Beach shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Liens in favor of The City of Delray Beach against the Debtor that are encumbering any assets of the Debtor.

(c)    <u>Impairment</u>.    The Class 3 Claim is Unimpaired and the Class 3 Claimholder shall be deemed to have accepted the Plan.

### 4.04    <u>Class 4 - Allowed Secured Claim of US Small Business Administration</u>

(a)    <u>Description</u>.    Class 4 consists of the Allowed Secured Claim of US Small Business Administration as it relates to the third position mortgage on the Real Property in the amount of $199,514.54.  The Debtor estimates the value of the Real Property ranges between $9,300,000 and $10,700,000.

(b)    <u>Treatment</u>.    Except to the extent that the holder of the Allowed Class 4 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of the Allowed Class 4 Claim, the Debtor shall pay US Small Business Administration as follows:

(i)    Commencing on the Effective Date, or as soon thereafter as is reasonably practicable, for a period of twelve (12) months, the Debtor shall pay interest only monthly payments to US Small Business Administration at a fixed interest rate based at 1 percentage point above the current Prime Rate as published in the Wall Street Journal (3.25% + 1%), amortized over thirty (30) years.

(ii)    Upon completion of the interest only payments described above, the Debtor shall make equal principal and interest monthly payments for a period of four (4) years at a fixed interest rate based at 1 percentage point above the current Prime Rate as published in the Wall Street Journal (3.25% + 1%), amortized over thirty (30) years.

(iii)    In addition to the foregoing monthly payments, the Class 4 Claimholder shall receive an annual payment in the amount equal to the Debtor's Net Annual Profits, less the amounts paid to the Class 1, 2, and 3 Claimholders, on January 15th of each year until the Allowed Class 4 Claim is paid in full.

(iv)    To the extent the Class 4 Claim is not paid in full based on the payments referenced in the preceding paragraphs, the entire outstanding principal balance, together with accrued, but unpaid interest, shall be due and payable on the fifth (5th) annual anniversary of the Effective Date.

The Debtor will not pay default rate interest or any penalties resulting from the bankruptcy filing. The Debtor will not compensate the holder of the Allowed Class 4 Claim for any damages incurred as a result of any reasonable reliance by such holder on any contractual provision or applicable law that entitles the holder of such claim to receive accelerated payment of such claim after the occurrence of a default.

During the life of the Plan, the Debtor shall continue to maintain insurance and fund taxes on the Real Property. There shall be no prepayment penalty on the aforementioned payments.

US Small Business Administration shall retain any and all Liens on the Real Property and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, US Small Business Administration shall release its Liens on all property retained by the Debtor, including the Real Property. Within thirty (30) days of completion of the aforementioned payments, US Small Business Administration shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Liens in favor of US Small Business Administration against the Debtor that are encumbering any assets of the Debtor.

(c)    Impairment.    The Class 4 Claim is Impaired and the Class 4 Claimholder is entitled to vote to accept or reject the Plan.

**4.05    Class 5 - Allowed General Unsecured Claims**

(a)    Description.    Class 5 consists of the Allowed General Unsecured Claims. Pursuant to the Debtor's Schedules, the Debtor estimates the aggregate amount of Allowed General Unsecured Claims is approximately $599,649.68. If all timely filed proofs of claims are deemed Allowed, the Debtor estimates the aggregate Class 5 Claims total $604,497.17. Upon Confirmation of this Plan, Florida Affordable Housing, Inc., an Insider, with Claims against the Debtor that aggregate $507,966.54, and Auburn Group Company, LLC, an Insider with Claims against the Debtor in the amount of $55,000 have agreed to subordinate payment of its Claims until all Allowed Claims in Classes 1 through 4 are paid in full in accordance with the terms of the Plan. The agreement by Florida Affordable Housing, Inc. and Auburn Group Company, LLC to subordinate their Claims is expressly conditioned upon the Confirmation of this Plan.

(b)    Treatment.    Except to the extent that the holder of the Allowed Class 5 Claim has been paid prior to the Effective Date, or agrees to a different treatment, at the election of each Holder of an Allowed Claim in Class 5, such Claimholder will receive payment pursuant to one of the following two options:

(**Election A**):    Commencing on the date that is the second annual anniversary of the Effective Date, the holders of Allowed Class 5 Claims shall be paid 100% of the Allowed Amount of such Claim, without interest, by receiving equal monthly payments for a period of thirty-six (36) months. In addition to the foregoing payments, each Class 5 Claimholder that elects Election A shall receive a pro rata annual payment in the amount equal to the Debtor's Net Annual Profits, less the amounts paid to the Class 1, 2, 3 and 4 Claimholders, on January 15th of each year until the Allowed Class 5 Claims have been in full.

**OR**

(**Election B**):  Within thirty (30) days of the Effective Date, the Allowed Class 5 Claims will be completely and fully satisfied by the payment in an amount equal to sixty-five percent (65%) of the Allowed amount of such Claim to be funded by Auburn Trace Joint Venture and Brian J. Hinner's, or their assigns, as part of their New Value Payment.  The Debtor estimates the amount of this payment to holders of Allowed Class 5 Claims that select Election B may range from $0 to $26,994.91.

**In the event the holder of an Allowed Class 5 Claim fails to make an election on the Ballot and file same Ballot with the Court by the Ballot Deadline, the Class 5 Claimholder will automatically receive the Election A treatment.**  A copy of the form Ballot is attached to the Disclosure Statement as **Exhibit "E".**

(c)    Impairment.  The Class 5 Claims are Impaired and Class 5 Claimholders are entitled to vote to accept or reject the Plan.

### 4.06    Class 6 - Allowed Equity Interests

(a)    Description.    Class 6 consists of the Allowed Equity Interests in the Debtor, which includes interests in any share of preferring stock, common stock or other instrument evidencing ownership interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

(b)    Treatment.    On the Effective Date, in exchange for Auburn Trace Joint Venture and Brian J. Hinner's, or their assigns, providing the funds for the New Value Payment[1], the holder of the Allowed Equity Interests shall retain their Equity Interests in the Debtor and shall receive no Distribution under the Plan on account of such Equity Interests, and the following parties will own the Reorganized Debtor:  Auburn Trace Joint Venture as the General Partner shall own a one percent (1%) interest in the Reorganized Debtor and Brian J. Hinners as the Limited Partner shall own a ninety-nine percent (99%) interest in the Reorganized Debtor.  The newly issued stock in the Reorganized Debtor shall be held in escrow until the payments required under the Plan have been repaid in full with an escrow agent to be designated by a notice of filing prior to the Confirmation Hearing.  Upon completion of the Plan payments to holders of Allowed Claims in Classes 1 through 5, the stock shall be released from escrow.

(c)    Impairment.    The Class 6 Claims are Impaired, but Class 6 Claimholders are not entitled to vote to accept or reject the Plan, as Class 6 Claimholders shall be deemed to have rejected the Plan.

---

[1]        As provided in more detail in the definitional section of the Plan and Section 7.03 of the Plan, the Debtor estimates the New Value Payment may range from $192,719.09 to $219,714.

### ARTICLE V
### PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED <u>ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS</u>

**5.01**     <u>**Voting of Claims**</u>

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court. Holders of claims valued at an unknown amount shall not be entitled to vote on Debtor's Plan.

**5.02**     <u>**Method of Distribution Under the Plan**</u>

(a)     Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Distribution Record Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)     Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)     Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)     No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Reorganized Debtor to any holder of a Claim unless a request therefor is made in writing to the Reorganized Debtor, or unless the Distribution is a final Distribution.

(f)     When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 5.03(f) of the Plan.

(g)     Any distributions of Cash or other property under the Plan that are unclaimed for a period of six (6) months after the Distribution Date shall constitute unclaimed funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(h)     Unless otherwise provided herein, all Initial Distributions and deliveries to be made on the Effective Date shall be made on the Initial Distribution Date.  Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

(i)     At the close of business on the Effective Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Distribution Record Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Distribution Record Date and prior to the Effective Date.  The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date.

### 5.03    Distributions Withheld for Disputed General Unsecured Claims

**(a)     Establishment and Maintenance of Reserve**

On the initial Distribution Date and each subsequent Distribution Date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 5.07 of the Plan (the "**Disputed Claims Reserve**").

**(b)     Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtor.

**(c)     Distributions Upon Allowance of Disputed General Unsecured Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor within ten (10) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

**(d)     No Surplus Distributions to Holders of Allowed General Unsecured Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtor.

**(e)** **Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtor.

**5.04** **Procedures for Allowance or Disallowance of Disputed Claims**

**(a)** **Objections to and Resolution of Administrative Claims and General Unsecured Claims**

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; *provided, however,* that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court. Unless otherwise ordered by the Court, the Debtor or the Reorganized Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court. The Debtor or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

**(b)** **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

**(c)** **Disallowed Claims**

All Claims held by Persons against whom the Debtor, Reorganized Debtor or Plan Administrator has commenced an Action under sections 522(f), 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to Section 5.04(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

**5.05** **Disbursing Agent**

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as disbursing agent under the Plan with respect to all Distributions to holders of Claims, and will make all Distributions required to be distributed under the applicable provisions of the Plan. Any disbursing agent may employ or contract with other entities to assist

in or make the Distributions required by the Plan.  Each disbursing agent will serve without bond, and each disbursing agent, other than the Reorganized Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor.  The Reorganized Debtor shall hold all reserves and accounts pursuant to the Plan and the Disputed Claims Reserve.

### 5.06    Setoffs and Recoupment

The Debtor may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim.

### 5.07    Estimations of Claims

For purposes of calculating and making Distributions under the Plan, the Debtor or Reorganized Debtor, as applicable, shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtor and the Reorganized Debtor may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objections, estimations, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 5.08    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claimholder shall have recourse against the disbursing agent, the Debtor, the Reorganized Debtor, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 5.09    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 5.10    Post-petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, postpetition interest shall not accrue on or after the Petition Date on account of any Claim.

### 5.11    Unclaimed Funds

Any funds unclaimed for the period described in paragraph 5.02(g) above shall be forfeited by the holder and will be re-deposited in the Reorganized Debtor's account to become property of the Reorganized Debtor.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.01    Assumption or Rejection of Executory Contracts and Unexpired Leases

**Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Reorganized Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) that is listed on an assumption list (the "**Assumption List**") which shall be filed with the Court

and served on the affected parties by no later than twenty (20) days prior to the Ballot Deadline, if appropriate; *provided, however*, that the Debtor or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtor or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtor or Reorganized Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Reorganized Debtor have any liability thereunder.

Holders of Claims resulting from rejection pursuant to Section 365 of the Bankruptcy Code shall have thirty (30) days after the earlier of (i) the Effective Date or (ii) the date of an Order granting rejection within which to file any Claim based on such rejection.  **THE FAILURE TO FILE SUCH REJECTION CLAIMS SHALL FOREVER BAR SUCH CLAIMS AND THE HOLDERS THEREOF SHALL NOT BE ENTITLED TO ANY DISTRIBUTION UNDER THIS PLAN.**

## ARTICLE VII

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

### 7.01  General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 7.02    The Reorganized Debtor

Except as otherwise provided in the Plan, on the Effective Date of the Plan, all Assets of the Debtor shall be vested in the Reorganized Debtor.  The Reorganized Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.

### 7.03    Source of Plan Funding & Feasibility

Funds to be used to make cash payments under the Plan shall derive from the Debtor's monthly income.  In addition, Auburn Trace Joint Venture and Brian J. Hinner's, or their assigns, agree to fund the New Value Payment.   As defined in the definition section of the Plan, the New Value Payment means the funding of the initial Plan payments to be paid within thirty (30) days of the Effective Date to be provided by Brian J. Hinners and Auburn Trace Joint Venture, or their assigns.  The Debtor estimates the New Value Payment will total approximately $206,216.54, which is comprised as follows:  (i) the initial payment to the holder of the Allowed Priority Tax Claims that the Debtor estimates totals $7.67; (ii) the initial payments to the holders of Allowed Secured Tax Claims in Class that the Debtor estimates totals $7,809.96 ($4,077.83 toward 2014

real estate taxes, $84.10 toward 2014 tangible property taxes; and $3,648.03 toward 2015 real estate taxes); (iii) the initial payment to the holder of the Allowed Class 2 Secured Claim of Iberia Bank that the Debtor estimates totals $14,951.35; (iv) the initial payment to the holder of the Allowed Class 3 Secured Claim of The City of Delray Beach in the amount of $149,243.50; (v) the initial payment to the holder of the Allowed Class 4 Secured Claim of US Small Business Administration that the Debtor estimates totals $706.61; and (vi) the initial payment to the holder of the Allowed Class 5 General Unsecured Claims that select Election B that the Debtor projects may total approximately $26,994.91.   For purposes of the Debtor's projection as it relates to the estimated amount of the initial Plan payment to be paid to holders of Allowed Class 5 General Unsecured Claims that select Election B, the Debtor estimated 50% of the Allowed Class 5 Claims would select Election A and the remaining 50% would select Election B.  The Debtor estimates this initial Plan payments to the holders of Allowed Class 5 Claims that select Option B may range from $0 to $26,994.91, which means the Debtor estimates the New Value Payment may range from $192,719.09 to $219,714.

As demonstrated in the projected operating income and expenses budget, which is attached to the Disclosure Statement as **Exhibit "F",** the Debtor is cash flow positive and has the funds available to perform the obligations under the Plan.  In order to assist in funding the Debtor's business operations under the Plan, the Debtor may retain its Cash on hand, the funds in its bank accounts, and may retain amounts received from accounts receivable to pay accounts payable.

The entire outstanding principal balance owed to Iberia Bank and the US Small Business Administration on account of their respective Class 2 and 4 Allowed Secured Claims shall be due and payable in full on or around the fifth (5th) anniversary of the Effective Date.  The Debtor estimates the aforementioned balloon payments will total approximately $4,110,184.16 in the aggregate.  This estimate does not include a reduction of any amounts paid to Classes 2 and 4 from the Debtor's Net Annual Profits.  The balloon payment to The City of Delray Beach is due on August 1, 2022.  The Debtor will fund the respective balloon payments by refinancing and renovating the Real Property.  The Debtor intends to apply for tax credit equity, bond financing through the state or county, and soft secondary mortgage financing, as well as federal grants for affordable housing.  If the Debtor is unsuccessful at obtaining local or state bond financing, the Debtor will apply for conventional bank financing and the Debtor's principals are prepared to make an equity paydown to assure their ability to refinance.   Based on the foregoing, the Debtor asserts that it is able to perform all of its obligations under the Plan, and as such, the Debtor's Plan satisfies section 1129(a)(11) of the Code.

### 7.04    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the Board of the Debtor or the Reorganized Debtor shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the laws of the State of Florida, and other applicable corporate law of the jurisdiction in which the Reorganized Debtor is organized, without any requirement or further action by the Board of Directors of the Debtor or the Reorganized Debtor.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall, if required, file its amended organizational documents with the secretary of the state of the state in which the Reorganized Debtor is incorporated.

**7.05** **Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**7.06** **Effective of Instruments and Agreements**

On the Effective Date, all agreements entered into or documents issued pursuant to the Plan, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to be effective simultaneously.

**7.07** **No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**7.08** **Continued Corporate Existence**

The Reorganized Debtor shall continue to exist after the Effective Date with all powers of a limited partnership under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law; and, following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.  After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

The Debtor's owners as of the Petition Date were as follows:  Brian J. Hinners (99% - Limited Partner); and Auburn Trace Joint Venture (1% - General Partner).   During the one year period prior to the Petition Date, Brian J. Hinners's salary and benefits during the one year period prior to the Petition Date totaled $0.00; and Auburn Trace Joint Venture's salary and benefits during the one year period prior to the Petition Date totaled $0.00.  Upon the Effective Date, the Reorganized Debtor shall be owned 1% by General Partner, Auburn Trace Joint Venture, and 99% by Limited Partner, Brian J. Hinners.

**7.09** **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**7.10** **Revesting of Assets**

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtor shall revest in the Reorganized Debtor on the Effective Date, free and

clear of all Liens, Claims and interests of holders of Claims, except as otherwise provided in the Plan or the Confirmation Order.

### 7.11    Release of Debtor

*The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, or any of the Assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against and Equity Interest in the Debtor shall be satisfied and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, or their Assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a Proof of Claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.*

### 7.12    Injunction Related to Release

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any Action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

### 7.13    Release by Holders of Impaired Claims

*This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of Action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtor may have against the Debtor. In consideration of the obligations of the Debtor, the Reorganized Debtor, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against or Equity Interest in the Debtor*

*shall be deemed to forever release and waive all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of Action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case or the conduct thereof, or this Plan.  Notwithstanding the foregoing, nothing in this Article 7.13, the Plan, or the Confirmation Order shall release any Claim or causes of Action for gross negligence or willful misconduct.*

### 7.14    Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any Actions to interfere with the implementation or consummation of the Plan, except with respect to Actions any such entity may take in connection with the pursuit of appellate rights.*

## ARTICLE VIII
## LIQUIDATION ANALYSIS

A plan proponent must demonstrate as a condition of confirmation, that each impaired Class of Creditors will receive as much as it would receive in a Chapter 7 proceeding.  A plan proponent must also demonstrate that the plan is "feasible," i.e., that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

### 8.01    Liquidation Analysis

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan.  Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of unsecured creditors and equity security holders would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtor's Assets if this Chapter 11 Case was converted to a Chapter 7 case under the Bankruptcy Code and the Assets were liquidated by a Trustee in bankruptcy (the "**Liquidation Value**" of such Assets).  The Liquidation Value would consist of the net proceeds from the disposition of Debtor's Assets and

would be augmented by any Cash held by Debtor.  As detailed in the Liquidation Analysis, attached hereto as **Exhibit "D",** the Debtor's Liquidation Value would not allow holders of Allowed General Unsecured Claims to receive any distribution, and the Debtor's Plan proposes holders of Allowed General Unsecured Claims with the option to be paid in full over the life of the Plan.    Accordingly, the Distributions under the Plan will provide at least the same recovery to holders of Allowed Claims against the Debtor on account of such Allowed Claims as would Distributions by a Chapter 7 Trustee.

## ARTICLE XI

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 9.01    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.04 of the Plan:

(i)      The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor and the Reorganized Debtor acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii)      All exhibits to the Plan shall be in form and substance reasonably acceptable to the Debtor and approved by the Court.

### 9.02    Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 9.04 of the Plan:

(i)      The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(ii)      The statutory fees owing to the United States Trustee shall have been paid in full;

(iii)      All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

(iv)      The Debtor's initial Plan payment is paid to all Classes entitled to a payment upon the Effective Date.

### 9.03    Effect of Failure of Conditions

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

### 9.04    Waiver of Conditions

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.02 of the Plan.  The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE X

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

a.   to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.   to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

c.   to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims or Claims;

d.   to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

e.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

f.   to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

g.   to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the plan supplement, or any order of the Court, including, without limitation, the Confirmation Order;

h.   to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

i.   to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

j.   to recover all Assets of the Debtor and Property of the Estate, wherever located;

k.   to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

l.   to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

m.  to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

n.   to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

o.   to hear any other matter not inconsistent with the Code; and

p.   to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### 11.01   Effectuating Documents and Further Transactions

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take

such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 11.02    Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.03    Authorization to Request Prompt Tax Determinations.

The Reorganized Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 11.04    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 11.05    Payment of Statutory Fees

The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 11.06    Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

**11.07    Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.08    Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**11.09    Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**11.10    Notices**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Reorganized Debtor:**

Auburn Trace, Ltd.
c/o Brian J. Hinners, President
777 E. Atlantic Avenue, Suite 200
Delray Beach, Florida 33483

**With a copy to:**

Shraiberg, Ferrara & Landau, P.A.
Attention:  Bradley S. Shraiberg, Esq.
2385 NW Executive Center Dr., Suite #300
Boca Raton, Florida 33431

**11.11    Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.12    Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**11.13    Section 1125(e) of the Code**

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.

**11.14    Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**11.15    No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**11.16    Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

**11.17    Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 11.18   Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 11.19   Inconsistency

In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.20   No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 11.21   Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 11.22   Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 11.23   No Penalty for Prepayment

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any Claim treated under this Plan.

### 11.24   Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 11.25   Remedy of Defects

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

*[Remainder of Page Intentionally Left Blank]*

# ARTICLE XII
## CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor and all Creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Code.

**DEBTOR IN POSSESSION:**

**AUBURN TRACE, LTD.**

By: _____
        Brian J. Hinners, President of
        Auburn Trace Joint Venture

{1930/000/00279764}

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this 6th day of April, 2015.

Respectfully submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com

By:    /s/ Bradley S. Shraiberg
        Bradley S. Shraiberg
        Florida Bar. No. 121622
        Lenore M. Rosetto Parr
        Florida Bar No. 064448