UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:                                          CASE NO. 15-10317-PGH
                                                CHAPTER 11
AUBURN TRACE, LTD.,

                 Debtor.
_____/

## MOTION OF THE CITY OF DELRAY BEACH TO APPOINT CHAPTER 11 TRUSTEE

THE CITY OF DELRAY BEACH ("**Delray**"), a secured creditor of the debtor and

debtor-in-possession, Auburn Trace, Ltd. (the "**Debtor**"), by and through undersigned counsel,

files its *Motion of the City of Delray Beach to Appoint Chapter 11 Trustee*, and would state as

follows:

### Introduction

The Debtor has failed to maintain the subject apartment complex to the detriment

of the secured creditors, unsecured creditors and the residents.  Rather than maintain the

Debtor's apartment complex as a responsible and prudent owner should do, the Debtor

has apparently diverted over $3.4m of the Debtor's funds (which should have been used

for repairs, replacements and maintenance) to affiliates and has made no effort to recover

any of the diverted funds.  As a result, the apartment complex continues to deteriorate

and the Debtor has made no provision for much needed repairs, replacements and

maintenance.  In fact, the Debtor's projections for the next five years have no provision

for the $2.1 million in deferred maintenance which has already been identified.  The

Debtor's projections evidence its inability to pay real property taxes on a going forward

basis.  Instead, the Debtor has chosen not to pursue a $1,000,000 receivable due to it from

the sale of assets and allow an affiliate to keep those funds.  The Debtor elected not to be

represented in the litigation and negotiation of the very complex settlement.  The

Debtor's owners have enjoyed extensive depreciation over the years and it would appear

- 1 -

that they want to avoid having to pay the IRS by trying to keep the status quo of barely maintaining the property while pulling out significant management fees.

**Background**

1. On January 7, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to conduct its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor owns and operates a restricted rent housing complex located in Delray Beach, Florida, which provides affordable housing to low-income residents along with a free-standing commercial space.

3. The City of Delray Beach ("**Delray**") is a secured creditor and the largest creditor in this case, holding in excess of $8.7 million in secured claims. Delray holds both the first and second mortgages on the Debtor's real property.

4. The appointment of a chapter 11 trustee in this case is both necessary and warranted based upon a continued deterioration of assets to the detriment of all creditors and parties in interest and an actual conflict of interest on the part of the Debtor's principal, Brian Hinners.

**Failure to Maintain the Property**

5. The first mortgage on the Debtor's property is evidenced by a Mortgage, Security Agreement and Assignment of Rents, dated April 27, 2006, recorded in Official Records Book 20273, pages 836-842, and as partially released by that certain Partial Release of Mortgage, Security Agreement and Assignment of Rents, dated May 25, 2010, recorded in Official Records Book 23905, pages 121-122, as assigned to IberiaBank pursuant to an Assignment, effective as of November 13, 2009, recorded in Official Records Book 23733, pages 651-54, and as assigned

to Delray pursuant to an Assignment of Note, Mortgage and Loan Documents, dated May 29, 2015, recorded in Official Records Book 27573, pages 168-172, all of the public records of Palm Beach County, Florida (the "**First Mortgage**").

6.     The second mortgage on the Debtor's property is evidenced by a Mortgage and Security Agreement, dated June 29, 1989, recorded in Official Records Book 6116, pages 521-529, of the public records of Palm Beach County, Florida (the "**Second Mortgage**").

7.     Paragraph 5(a) of the First Mortgage requires the Debtor to maintain the property in good condition and not to allow it to deteriorate in any manner.  Likewise, paragraph 2 on page 2 of the Second Mortgage requires the Debtor to maintain the property.  Despite these clear requirements of both the First Mortgage and the Second Mortgage, the Debtor has failed to maintain the property and, based upon the projections contained in Exhibit F to *Auburn Trace, Ltd.'s Amended Disclosure Statement [D.E. #91]* (the "**Disclosure Statement**"), the Debtor has no intention of maintaining the property for the next five years.  Quite simply, the property (which is the collateral for the Debtor's obligations to Delray) has deteriorated and continues to deteriorate without the Debtor having the slightest inclination to effectuate any of a myriad of necessary replacements, repairs and maintenance.

8.     The unrepaired deterioration to the Debtor's property is striking.  Among the replacements, repairs and maintenance issues facing the Debtor and which the Debtor fails to address is an irrigation system that does not work properly and landscaping dying as a result, paved areas with standing water and "alligator cracking", a playground area that is closed and rotted, a car wash area that is completely destroyed, improperly repaired sidewalks due to pervasive tree root growth, dead trees by the retention pond and units that all need renovation and rehabilitation.  The individual apartment units **all** require new air conditioning units, new

appliances, new kitchen counters and new cabinets. There are severe structural issues with many of the buildings including stairways which are held up by wood.  The property is in terrible condition. In the pro forma attached to the Disclosure Statement, there is essentially nothing allocated during the 5 years of the plan for replacements of appliances, air conditioners, kitchen and bath cabinets and other repairs, all of which have a useful life that expires within that five year period.

9.      A recent report prepared for the City of Delray indicates that the cost of the unaddressed replacements, repairs and maintenance is in excess of $2.1 million excluding the irrigation system and repairing stair foundations.  The Debtor fails to address this in its ongoing cash collateral budgets or in its Plan projections for the next five years of operations.  It appears the Debtor is content to sit idly by and allow the property, which is already in need of extensive repairs and maintenance, to continue to deteriorate, to the detriment of all creditors and parties in interest.

10.      It is also noteworthy that a comparable project is in the last stages of construction adjacent to the Debtor's property.  Clearly, the competition caused by a new, state of the facility can have an immediate and devastating effect on the value of the Debtor's property.

11.      However, based on the projections prepared by the Debtor and attached to its Disclosure Statement, the Debtor will not generate sufficient revenue to effectuate these necessary repairs.  In fact, based on the Debtor's own projections, it will not even generate sufficient revenue to satisfy its real property tax obligations if it emerges from bankruptcy in the reorganization proposed by its pending plan.

12.       If several million dollars of repairs are not made to this property immediately it will continue to deteriorate and the deterioration will accelerate.  It is quite possible that a tipping

point will be crossed where the value of the property will drop very rapidly and any collateral value to protect the interest of Delray and other creditors will disappear. In addition, this is a public health and safety matter for the residents. This is unacceptable and mandates the appointment of a chapter 11 trustee who will address these issues.

**Conflict of Interest**

13.    There are several examples of conflict of interest and self-dealing which require the appointment of a chapter 11 trustee. The Debtor's principal, Brian Hinners, has agreed to a settlement which the Debtor will be required to release claims listed on its schedules for no consideration so that another entity which is also controlled by Mr. Hinners can realize a $1,000,000 payout. The Debtor also lists on its schedules approximately $2.8 million due from affiliates, which the Debtor has made no effort to recover. In December 2013, according to the General Ledger, the Debtor wrote off another $653,125.41 in receivables due from its limited partner without explanation. The Debtor is also not exploring the option of selling the property, which could realize immediate and full payment to all creditors, apparently because of the adverse tax consequences that its partners will face because the basis in the property appear to be extraordinarily low.

14.    On March 20, 2015, the Debtor filed the *Debtor's Motion For Approval of Confidential Settlement Agreement Pursuant to Rule 9019 [D.E. #61]* (the "**Settlement Motion**"), which seeks approval of a settlement among the Debtor and certain affiliates, insiders and former insiders of the Debtor.

15.    The dispute being settled relates to a sale of real property by the Debtor to Village at Delray, Ltd. According to the closing statement, $1,000,000 of the purchase price was withheld and was to be paid to the Debtor after the occurrence of certain events. This asset is

apparently listed on Schedule B of the Debtor's Schedules [D.E. #28], with a series of other receivables described as "Due from related parties", in response to item #18. The listed value of this asset is $2,861,239.56 and the Debtor has valued the asset, without explanation, at $100,000.

16.    Upon reviewing the underlying documents, it is clear that this settlement involves a payment in excess of $1,000,000, with none of the funds being paid to the Debtor or the estate. It simply appears from the Settlement Motion and the attached settlement agreement that a total of $1,000,075 is to be paid into the trust account of Sweetapple, Broeker & Varkas, P.L. ("**Sweetappple**"). Sweetapple is identified in the Settlement Motion as counsel for numerous parties to the settlement including, but not limited to, the Debtor. However, Mr. Sweetapple has testified that he does not represent the Debtor in connection with the settlement agreement or in the negotiations that resulted in the settlement agreement.

17.    Nevertheless, the settlement requires the Debtor to execute releases for absolutely no consideration.

18.    Apparently, Auburn Development, LLC, the entity that will be receiving the $1,000,000 payment, is also controlled by Brian Hinners, the general partner of the Debtor.

19.    There is absolutely no explanation provided in the Settlement Motion as to why the Debtor has agreed to release claims with regard to a scheduled asset for no consideration. Instead, it appears that the Debtor, through its principal, Brian Hinners, has agreed to release scheduled claims of the Debtor for no consideration so that Mr. Hinners' non-debtor entity can receive a $1,000,000 payout. This is clearly a conflict of interest.

20.    In addition, the Debtor has made no effort any to collect the $2.8 to $3.4 million due to it from related parties. This amount, if collected, may be sufficient to resolve the deferred repairs and maintenance issue discussed above. Nevertheless, nothing is being done. The

Debtor's valuation of this asset at $100,000 on its schedules is utterly devoid of candor. Auburn Development, LLC is one of the "related parties" that owe the Debtor an aggregate of approximately $2.8 million. Based on the Debtor's books and records, the amount due from Auburn Development, LLC is in excess of $1,100,000. Just two weeks prior to signing the schedules in which he valued the asset at $100,000, Brian Hinners attended the mediation at which it was agreed that Auburn Development, LLC would receive $1,000,000. Clearly, Mr. Hinners knew quite well that Auburn Development, LLC would have funds to satisfy a very significant portion of its debt to the Debtor and chose not to disclose that very relevant fact. Even the *Settlement Motion*, does not disclose that Auburn Development, LLC owes the Debtor over $1.1 million. Perhaps even more disturbing is that Brian Hinners has testified that he and his father, chapter 7 debtor Thomas Hinners, would determine how the settlement proceeds would be distributed amongst their various entities.

21.     It appears that a sale of the property may provide sufficient cash to the estate to pay all creditors in full, and far sooner than the distributions provided for in the Debtor's plan. The Debtor, however, does not seem to be making any effort to sell the property. The reason for seems to be clear. The Debtor has so significantly depreciated the property during the course of its ownership of the property that the Debtor's basis is apparently very low. As a result of the low basis, it would appear that a large portion of the sales proceeds would be taxable and there would be insufficient funds from the sale to pay these taxes because the majority of sales proceeds would be needed to satisfy the three existing mortgages on the property. Therefore, it would seem that a sale of the property is not being considered because of the negative tax implications on the Debtor's partners.

22.    Finally, this Debtor is not even clear on its ownership structure.  Although the Debtor's schedules list Brian Hinners as the Debtor's 99% limited partner, at his recent deposition in this matter, Mr. Hinners testified that was incorrect and that it is his father, Thomas Hinners, who is in a pending chapter 7 proceeding, that is, in fact, the 99% limited partner of this entity.

**Conclusion**

23.    Based upon the foregoing, it appears that sufficient cause exists in this matter to warrant the appointment of a chapter 11 trustee.  It is clearly in the best interests of creditors. Under its current management, the Debtor's only asset, its property, continues to deteriorate with no effort being made to address much needed repairs, maintenance and replacements, all while a competing project is being completed adjacent.  In fact, under current management, the Debtor's current projections admit that they have insufficient revenue to pay real estate taxes on an ongoing basis.  Current management has also made no effort to collect very significant sums from related entities and cannot explain this failure.  Instead, current management in more than willing to release valuable causes of action so that related parties can realize significant settlement recoveries.  Appointment of a chapter 11 trustee is warranted and necessary to prevent any further waste.

WHEREFORE, Delray moves that the Court enter an order denying the Settlement Motion, appointing a chapter 11 trustee pursuant to §1104 of the Bankruptcy Code, and for such other and further relief as this Court deems just and proper.

I certify that a true copy of the foregoing was served on the parties listed below, in the manner and date stated.

- 8 -

Respectfully Submitted this 31st day of July, 2015.

FURR AND COHEN P.A.
Atty for The City of Delray Beach
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532 fax
By: /s/ Robert C. Furr
       Robert C. Furr, Esq.
       Florida Bar No. 210854
       E-mail: rfurr@furrcohen.com

**SERVED VIA FAX TRANSMITTAL: (7-31-2015)**
City of Delray Beach
Bradley Shraiberg, Esq. (bshraiberg@sfl-pa.com)
Lenore M Rosetto, esq. (lrosettoparr@sfl-pa.com)

**SERVED VIA ECF NOTICE: (7-31-2015)**

- Heidi A Feinman Heidi.A.Feinman@usdoj.gov
- Robert C Furr bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com
- Alvin S. Goldstein bnasralla@furrcohen.com,
  atty_furrcohen@bluestylus.com;agoldstein@furrcohen.com
- David W. Langley dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
- Orfelia M Mayor omayor@ombankruptcy.com,
  legalservices@pbctax.com;carmen@ombankruptcy.com;cmbk@ombankruptcy.com;omayor@ecf.inforuptcy.com
- Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov
- Eric S Pendergraft ependergraft@sfl-pa.com, dwoodall@sfl-pa.com;scusack@sfl-pa.com;vchapkin@sfl-pa.com;ddeluca@sfl-pa.com
- Lenore M Rosetto lrosettoparr@sfl-pa.com, scusack@sfl-pa.com;dwoodall@sfl-pa.com;ematteo@sfl-pa.com
- Bradley S Shraiberg bshraiberg@sfl-pa.com, dwoodall@sfl-pa.com;lrosettoparr@sfl-pa.com;scusack@sfl-pa.com;blee@sfl-pa.com;bshraibergecfmail@gmail.com;ematteo@sfl-pa.com
- Jesse E Summers jes@rtlaw.com, sgs@rtlaw.com

H:\LIBRARY\BANKRUPTCY\City of Delray Beach 14-335\PLD\Motion to Appoint Trustee.doc-BJN