UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:                                                              CASE NO. 15-10317-PGH
                                                                    CHAPTER 11
AUBURN TRACE, LTD.,

      Debtor.
_____/

**CITY OF DELRAY BEACH'S MOTION
FOR RELIEF FROM THE AUTOMATIC STAY**

     THE CITY OF DELRAY BEACH ("**Delray**"), a secured creditor of the debtor and debtor-in-possession, Auburn Trace, Ltd. (the "**Debtor**"), by and through undersigned counsel, files this *Motion for Relief From the Automatic Stay*, and would state as follows:

SUMMARY OF REQUESTED RELIEF

     1.    Delray is seeking relief from the automatic stay to foreclose on its First Mortgage (as defined herein) and Second Mortgage (as defined herein).

     2.    Delray is entitled to relief because the Debtor in default of several nonmonetary obligations under both the First Mortgage and Second Mortgage, which will continue past confirmation and are not cured through the Plan and constitute "cause" under section 362(d)(1). Furthermore, this is a single asset real estate case and the Plan is not confirmable and relief should be granted under section 362(d)(3). Finally, "Cause" exists for this Court to grant Delray relief from the automatic stay. Delray as holder of the First Mortgage is the party to an enforceable, prepetition waiver of the automatic stay by the Debtor, which constitutes "cause" under section 362(d)(1).

- 1 -

**BACKGROUND**

### A. Procedural History[1]

3. On January 7, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to conduct its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor owns and operates a restricted-rent housing complex located in Delray Beach, Florida, which provides affordable housing to low-income residents along with a freestanding commercial space.

5. The City of Delray Beach ("**Delray**") is a secured creditor and the largest creditor in this case, holding in excess of $9.5 million in secured claims. Delray holds both the first and second mortgages on the Debtor's real property and improvements thereon located at:

> Tract C of the Plat of AUBURN TRACE, according to the Plat thereof on file in the office of the Clerk of the Circuit court in and for Palm Beach County, Florida, recorded in Plat Book 64, 184, Public Records of Palm Beach County, Florida.
> a/k/a 625 Auburn Circle West, Delray Beach, Florida 33344

(the "**Property**").

6. The Debtor has scheduled the Property to have a value of $9,300,000.00 and personal property with a value of $307,503.81. *See*, Schedules [ECF No. 28].

### B. The First Mortgage

7. On or about April 27, 2006, Auburn Trace executed and delivered that certain Promissory Note in favor of Orion Bank ("**Orion**"), in the principal amount of $8,200,000 (the

---

[1] Delray will be referencing other filings for each document that is to be attached for stay relief and has already been filed with the Court in accordance with Local Rule 9004-1(D).

- 2 -

"**Initial Note**").  A true and correct copy of the Initial Note is attached to **Composite Exhibit "1"**.

8. On or about December 13, 2006, Auburn Trace executed and delivered that certain Future Advance Promissory Note in favor of Orion in the principal amount of $1,200,000 (the "**Future Advance Note**"), a true and correct copy of the Future Advance Note is attached to Proof of Claim No. 13, which Future Advance Note was consolidated with the Initial Note by virtue of that certain Consolidated Promissory Note, dated December 13, 2006, executed and delivered by Auburn Trace in favor of Orion in the principal amount of $9,400,000 (the "**Consolidated Note**"), a true and correct copy of the Consolidated Note is attached to Proof of Claim No. 13.  The Consolidated Note was endorsed to IberiaBank by virtue of that certain Allonge, dated March 2, 2010 (the "**Allonge**"), a true and correct copy of the Allonge is attached to **Composite Exhibit "1"**.  The Initial Note, the Future Advance Note, the Consolidated Note and the Allonge are collectively referred to herein as the "**First Note**").

9. The First Note is secured by a first mortgage on the Property, evidenced by a Mortgage, Security Agreement, and Assignment of Rents, dated April 27, 2006, recorded in Official Records Book 20273, pages 836-842, and as partially released by that certain Partial Release of Mortgage, Security Agreement, and Assignment of Rents, dated May 25, 2010, recorded in Official Records Book 23905, pages 121-122, as assigned to IberiaBank pursuant to an Assignment , effective as of November 13, 2009, recorded in Official Records Book 23733, pages 651-54 (the "**Iberia Assignment**").  Collectively hereinafter referred to as the "**First Mortgage**," a true and correct copy of which is attached to **Composite Exhibit "1"**.

10. To further secure the indebtedness evidenced by the First Note, the Debtor, as assignor, executed in favor of Orion, as assignee, that certain Assignment of Rents and Leases,

dated April 26, 2006, recorded in Official Records Book 20273, pages 1419-1424, of the public records of Palm Beach County, Florida, as assigned to IberiaBank pursuant to the Iberia Assignment. Collectively hereinafter referred to as the "**Assignment of Rents**," a true and correct copy of which is attached to **Composite Exhibit "1"**.

11. To perfect the security interest in the personal property described in the First Mortgage, Orion and IberiaBank filed the following instruments (collectively, the "**Financing Statements**"):

    a. that certain Uniform Commercial Code Financing Statement filed with the Florida Secured Transaction Registry bearing file number 200602558768, as continued by that certain Uniform Commercial Code Financing Statement Amendment filed with the Florida Secured Transaction Registry bearing file number 20110415129,

    b. To further perfect the security interest in the personal property described in the First Mortgage, Orion and IberiaBank filed that certain Uniform Commercial Code Financing Statement filed with the Florida Secured Transaction Registry bearing file number 20080920410, as continued by that certain Uniform Commercial Code Financing Statement Amendment filed with the Florida Secured Transaction Registry bearing file number 201308753355.

True and correct copies of the Financing Statements are attached to **Composite Exhibit "1"**.

### a. Debtor's Defaults Under First Mortgage

12. The Debtor defaulted under the First Note by failing to pay all outstanding principal, together with accrued and unpaid interest and all other amounts payable thereunder, on the extended maturity date of April 13, 2012.

13. Following this initial monetary default, and in connection with the First Note and First Mortgage, the parties entered into a Forbearance Agreement, dated June 28, 2012 (the "**Forbearance Agreement**"), pursuant to which IberiaBank agreed to forbear from enforcing its rights under the First Note and related documents until June 14, 2014. A true and correct copy of the Forbearance Agreement is attached to **Composite Exhibit "1"**. The Debtor remained in monetary default by virtue of its failure to pay all sums due at the expiration of the forbearance period.

14. On October 1, 2014, counsel for IberiaBank sent a letter to the Debtor demanding turnover of all rents from the Property, electing to collect interest at the Default Rate of Twenty Percent (20%) going forward, as a result of the Debtor's failure to cure its default under the terms of the First Note, First Mortgage and related loan documents. The Debtor continued to remain in default under the First Note and First Mortgage, IberiaBank commenced a foreclosure action in the Circuit Court, Fifteenth Judicial Circuit, in and for Palm Beach County (the "**Iberia Foreclosure Action**").

### b. Assignment to Delray

15. On, and effective as of, May 29, 2015, IberiaBank executed an Assignment of Note, Mortgage, and Loan Documents, as assignor, assigning the Initial Note, the Future Advance Note, the Consolidated Note, the Allonge, the First Mortgage, and the Financing

Statements[2], which was recorded in Official Records Book 27573, pages 168-172, of the public records of Palm Beach County, Florida and the Forbearance Agreement was assigned to Delray pursuant to the Assignment of Forbearance Agreement executed by IberiaBank, as assignor (collectively the "**Delray Assignment**"). True and correct copies of the Delray Assignment documents are attached hereto as **Composite Exhibit "2"**.[3]

16. As of August 11, 2015, Delray is owed $5,173,199.56 as the holder of the First Note, First Mortgage, and other related loan documents, with interest, attorneys' fees and costs continuing to accrue. The prepetition amount due and owing, under the First Note and First Mortgage is $4,630,623.22, as indicated in Proof of Claim No. 13, the Indebtedness Worksheet attached hereto as **Exhibit "3"** and post-petition interest due is and owing, through August 11, 2015, is $595,469.52 as indicated in **Exhibit "3"**. *See also* Affidavit of John A. Warner, CFO Delray Beach, **Exhibit "4"**.

**C. The Second Mortgage**

17. On or about June 29, 1989, Auburn Trace executed and delivered that certain Promissory Note in favor of Delray, in the principal amount of $3,840,000, as revised by the Agreement to Revise Term and Payment Schedule of $3,840,000 Note Dated June 29, 1989, dated July 1, 1997, recorded in Official Records Book 9883, pages 1596-1599, of the public records of Palm Beach County, Florida (the "**Delray Note**"). A true and correct copy of the Delray Note is attached hereto as **Exhibit "5"**.

18. The Delray Note is secured by a second mortgage on the Property, evidenced by a Mortgage and Security Agreement, dated June 29, 1989, recorded in Official Records Book

---

[2] Additionally, the Financing Statements were assigned to Delray pursuant to the Uniform Commercial Code Financing Statement Amendment filed with the Florida Secured Transaction Registry bearing file number 201504142088 and file number 20150414207X, respectively.

[3] The Assignment is further evidenced by the *Transfer of Claim Other than for Security* [ECF No. 100].

6116, pages 521-529, of the public records of Palm Beach County, Florida (the "**Second Mortgage**"). A true and correct copy of the Second Mortgage is attached as **Exhibit "6"**.

19. The Debtor defaulted under the Delray Note by failing to make the payment of $149,243.68 due on December 31, 2014.

20. As of August 11, 2015, Delray is owed $4,322,153.57 as holder of the Delray Note and Second Mortgage, interest, attorneys' fees and costs continuing to accrue. The prepetition amount due and owing, under the Delray Note and Second Mortgage, is $4,239,427.04, as indicated in Proof of Claim No. 12, the Indebtedness Worksheet attached hereto as **Exhibit "3"** and post-petition interest due and owing, through August 11, 2105, is $82,581.72 as indicated in **Exhibit "3"**. *See also* Affidavit of John A. Warner, CFO Delray Beach, **Exhibit "4"**.

## RELIEF REQUESTED

21. Delray is seeking immediate stay relief under both §362(d)(1) and §362(d)(2) of the Bankruptcy Code.

22. Section 362(d)(1) provides that stay relief should be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." Courts have interpreted the language of Section 362(d)(1) to include a wide range of circumstances constituting "cause" for stay relief. *In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008)(citing *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989) (holding a petition filed in bad faith justifies lifting the stay); *In re Robbins*, 964 F.2d 342, 346 (4th Cir. 1992) (concluding cause exists where lifting the stay will promote judicial economy)).

23. Whether cause exists to grant stay relief is left to the discretion of the court on case-by-case basis. The court looks to the totality of the circumstances in each particular case

when making this determination.  *Bryan Road*, at 854 (internal citations omitted).  The "'decision to lift the stay is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion.'" *Id*. (quoting *In re Dixie Broad., Inc.*, 871 F.2d at 1026).

24. For the reasons stated below stay relief is appropriate in this case.

### D. Continuing Nonmonetary Default

25. In addition, and perhaps of far greater importance, the Debtor is in default of nonmonetary obligations to Delray under both the First Mortgage and the Delray Mortgage because the Debtor has allowed the Property to deteriorate and fall into disrepair.

26. Paragraph 5(a) of the First Mortgage requires the Debtor to maintain the Property in good condition and not to allow it to deteriorate in any manner.  Likewise, paragraph 2 on page 2 of the Delray Mortgage requires the Debtor to maintain the property.  Despite these clear requirements of both the First Mortgage and the Second Mortgage, the Debtor has failed to maintain the Property and, based upon the projections contained in Exhibit F to *Auburn Trace, Ltd.'s Amended Disclosure Statement* [ECF No. 91] (the "**Disclosure Statement**"), the Debtor has no intention of maintaining the property for the next five years.  Quite simply, the Property (which is the collateral for the Debtor's obligations to Delray) has deteriorated and continues to deteriorate without the Debtor having the slightest inclination to effectuate any of a myriad of necessary replacements, repairs, or maintenance.

27. The unrepaired deterioration to the Property is striking.  Among the replacements, repairs and maintenance issues facing the Debtor, which the Debtor fails to address is an irrigation system that does not work properly and landscaping dying as a result, paved areas with standing water and "alligator cracking", a playground area that is closed and rotted, a car wash area that is completely destroyed, improperly repaired sidewalks due to pervasive tree root

growth, dead trees by the retention pond and units that all need renovation and rehabilitation. The individual apartment units **all** require new air conditioning units, new appliances, new kitchen counters, and new cabinets. There are severe structural issues with many of the buildings including stairways which are held up by wood. The Property is in terrible condition. In the pro forma attached to the Disclosure Statement, there is essentially nothing allocated during the 5 years of the plan for replacements of appliances, air conditioners, kitchen and bath cabinets and other repairs, all of which have a useful life that expires within that five year period.

28. A recent report prepared for the City of Delray indicates that the cost of the unaddressed replacements, repairs, and maintenance is in excess of $2.1 million excluding the irrigation system and repairing stair foundations. The Debtor fails to address this in its ongoing cash collateral budgets or in its Plan projections for the next five years of operations. It appears the Debtor is content to sit idly by and allow the Property, which is already in need of extensive repairs and maintenance, to continue to deteriorate, to the detriment of all creditors and parties in interest.

29. It is also noteworthy that a comparable project is in the last stages of construction adjacent to the Property. Clearly, the competition caused by a new, state of the facility can have an immediate and devastating effect on the value of the Property.

30. However, based on the projections prepared by the Debtor and attached to its Disclosure Statement, the Debtor will not generate sufficient revenue to effectuate these necessary repairs. In fact, based on the Debtor's own projections, it will not even generate sufficient revenue to satisfy its real property tax obligations if it emerges from bankruptcy in the reorganization proposed by its pending plan.

31. Accordingly, relief from stay should be granted in favor of Delray.

### E. Relief is Warranted Under 11 U.S.C. § 362(d)(3)

32. Likewise, grounds exist for granting Delray relief from stay under section 362(d)(3) of the Bankruptcy Code, because this is a single asset real estate case and the Debtor's pending Plan has no possibility of being confirmed within a reasonable period of time and the Debtor has failed to make any monthly payments on account of either the First Mortgage or the Second Mortgage.

33. The Debtor's Plan is patently uncomfirmable. As set forth above, despite the Property being in dire need of repairs, replacements and maintenance, the Debtor's Plan makes absolutely no provision for the payment of these expenses. In fact, Debtor's Plan does not project sufficient income for the payment of real property tax obligations on a going forward basis. In addition, the Debtor's Plan is flawed because it has no provision or mechanism for the Debtor to seek to collect in excess of $2.8 million due to it from its various insider affiliates. The Debtor's Plan also does not provide for the payment of any of the unpaid post-petition interest due to the holders of the First Mortgage and the Second Mortgage. Further, the interest rates proposed for the First Mortgage and the Second Mortgage do not meet the criteria required by the United States Supreme Court in *Till v. SLS Credit Corporation*, 541 U.S. 465 (2004). Accordingly, the Debtor's Plan is not confirmable.

34. The Debtor has also not commenced monthly payments to Delray on account of either the First Mortgage or the Second Mortgage. Each cash collateral budget submitted to the Court by the Debtor make absolutely no provision for monthly payments on account of the First Mortgage or the Delray Mortgage, and the most recent cash collateral budget is no exception.

35. Accordingly, relief from the automatic stay is appropriate under both §362(d)(1) and §362(d)(3) of the Bankruptcy Code.

**F. The Forbearance Agreement**

36. The Forbearance Agreement specifically provides in paragraph 8, the Debtor specifically agreed that in the event of a bankruptcy proceeding, it waived the automatic stay provisions of §362 of the Bankruptcy Code, affirmatively consented to stay relief and would not oppose or request any other party to oppose the lifting of the automatic stay.

37. Delray is entitled to the enforcement of the paragraph 8 of the Forbearance Agreement. *See Bryan Road*, at 848-49 (adopting the analysis of Judge Laney with respect to prepetition agreements waiving the automatic stay in *In re Desai*, 282 B.R. 527 (Bankr. S.D.Ga. 2002)). The Debtor operates through its principals who are sophisticated real estate investors with substantial experience and assets available to them to negotiate and enter the Forbearance Agreement with a thorough analysis of each provision in the Forbearance Agreement, including the waiver of automatic stay. *See Bryan Road*, at 849.

38. The Debtor received substantial consideration for the stay waiver. The Debtor received two-years of relief from the IberiaBank to allow the Debtor to obtain refinancing or sell the property to remedy or satisfy the outstanding obligation under the First Mortgage. The Debtor was unable to accomplish either and the First Mortgage remains in default. *See, Id*.

39. Stay relief will have minimal effect on other parties. Delray is the First and Second Mortgage holder. The US Small Business Administration holds a third mortgage on the Property in the scheduled amount of $199,514.54. *See*, Schedules [ECF No. 28]. The Debtor also scheduled $599,649.68 in general unsecured claims [ECF No. 28], of which $562,966.54 are insider claims[4] that may be subject to complete setoff, leaving a minimal general unsecured creditor pool.

---

[4] Insider Auburn Group Company, LLC has a scheduled claim of $55,000.00 and Insider Florida Affordable Housing, Inc., has a scheduled claim of $507,966.54.

40. Finally, the Debtor's Plan is not feasible. As was articulated in Section D, above, the Plan is not feasible because: (i) the Property is projected to produce flat revenues throughout the term of the Plan, which are insufficient to cover the over $2 million in capital expenditures necessary to remediate the Property and apart from the necessary capital expenditure, the revenues are insufficient to cover the continuous operating expenses of the Property; (ii) the projections are based on interest that do not satisfy the requirements of *Till*, 541 U.S. 465 and do not account for future real estate and property taxes; (iii) the Plan is speculative, with hopes of obtaining new financing at the end of the Plan or liquidating the property to satisfy the Mortgages; and (iv) the Debtor is and will remain in nonmonetary default of the First and Second Mortgages irrespective of the implementation of the Plan.

41. The waiver of stay relief set forth in the Forbearance Agreement is enforceable under the *Bryan Road/Desai* analysis. This waiver constitutes "cause" for granting Delray relief under section 362(d)(1).

WHEREFORE, Delray moves that the Court enter an order granting it relief from the automatic stay to proceed with foreclosures of both the First Mortgage and the Delray Mortgage, and for such other and further relief as this Court deems just and proper.

Respectfully submitted this 24th day of August 2015.

        FURR AND COHEN P.A.
        *Attorneys for The City of Delray Beach*
        2255 Glades Road, Suite 337W
        Boca Raton, FL 33431
        (561) 395-0500/(561)338-7532 fax

        By: */s/ Robert C. Furr*
            Robert C. Furr, Esq.
            Florida Bar No. 210854
            E-mail: rfurr@furrcohen.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served on the parties listed below, in the manner stated on August 24, 2015.

By: /s/ Robert C. Furr
Robert C. Furr, Esq.

**MANUAL NOTICE PARTIES – VIA US MAIL:**

Kenneth Dennison
501 Congressional Blvd
Carmel, IN 46032

Kenneth Lowenhaupt
7765 SW 87 Ave #201
Miami, FL 33173

**SERVED VIA E-MAIL:**

City of Delray Beach

**SERVED VIA ECF NOTICE:**

- Robert C Furr bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com
- David W. Langley dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com
- Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov
- Eric S Pendergraft ependergraft@sfl-pa.com, dwoodall@sfl-pa.com;scusack@sfl-pa.com;vchapkin@sfl-pa.com;ddeluca@sfl-pa.com
- Lenore M Rosetto lrosetto@sfl-pa.com, scusack@sfl-pa.com;dwoodall@sfl-pa.com;ddeluca@sfl-pa.com
- Bradley S Shraiberg bshraiberg@sfl-pa.com, dwoodall@sfl-pa.com;vchapkin@sfl-pa.com;lrosetto@sfl-pa.com;scusack@sfl-pa.com;blee@sfl-pa.com;bshraibergecfmail@gmail.com;ddeluca@sfl-pa.com
- Jesse E Summers jes@rtlaw.com, sgs@rtlaw.com

H:\LIBRARY\BANKRUPTCY\City of Delray Beach 14-335\PLD\Objection to Motion to Approve Confidential Settlement.doc-BJN