UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUBURN TRACE, LTD.                                  Chapter 11

      Debtor.                                        Case No.:  15-10317-PGH

_____/


## AUBURN TRACE, LTD.'S and (SECURED CREDITOR) THE CITY OF DELRAY BEACH'S JOINT CHAPTER 11  PLAN OF LIQUIDATION


November 17, 2015


Respectfully submitted,

Bradley S. Shraiberg, Esquire
Lenore M. Rosetto Parr, Esquire
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email:  lrosettoparr@sfl-pa.com

**ATTORNEYS FOR DEBTOR**

Robert C Furr, Esquire
FURR AND COHEN, P.A.
2255 Glades Rd. Suite 337W
Boca Raton, Florida 33433
Telephone (561) 396-0500
Facsimile (561) 338-7532
Email:  rfurr@furrcohen.com

**ATTORNEYS FOR THE CITY OF DELRAY BEACH,
SECURED CREDITOR**

**DEBTOR'S AND CITY OF DELRAY BEACH'S PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Auburn Trace, Ltd. (the "**Debtor**") joined by secured creditor, the City of Delray Beach, hereby proposes the following plan of liquidation under section 1121(b) of the Code:

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"*50% DB Payment*" shall mean fifty percent (50%) of any remaining net Sale Proceeds paid to this Estate after DB receives $9,050,000. In the event that DB's Allowed Secured Claim is paid in full from its portion of the fifty percent (50%) of the remaining proceeds, than all remaining proceeds shall be funded to the Estate and pay Allowed Claims as set forth in sections 4.04 through 4.06 of the Plan.

"*Actions*" shall mean all actions that a trustee or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

"*Administrative Claim*" shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

"*Administrative Bar Date*" shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

"*Administrative Claimant*" shall mean the holder of an Administrative Claim.

"*Allowed Amount*" shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no

event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

"*Allowed Claim(s)*" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"*Allowed Equity Interest*" shall mean any Equity Interest that has not been timely disputed, or, if timely disputed, which has been Allowed by Order of the Court that has become a Final Order.

"*Allowed General Unsecured Claim*" shall mean an Allowed Claim, not entitled to priority, which arose or which is deemed to have arisen prior to the filing of the Petition commencing this Case and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Case pursuant to an agreement approved by the Bankruptcy Court.

"*Allowed Priority Tax Claim*" shall mean an Allowed Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"*Allowed Secured Claim*" shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

"*Article*" shall mean one of the numbered Articles of the Plan.

"*Assets*" shall mean all of the right, title, and interest of the Debtor in and to Property of the Estate, whether tangible or intangible.

"*Assumed Contract*" shall mean an Executory Contract (as modified or amended pursuant to the Plan prior Order of the Court, or by agreement of the parties) that is assumed by the Debtor pursuant to the Plan.

"*Assumption List*" shall mean the list of executory contracts and unexpired leases, if any, to be assumed, pursuant to Article VII of the Plan that shall be filed, if necessary, with the Clerk of Court as part of the Plan Supplement.

"*Avoidance Action(s)*" shall mean the Actions pursuant to chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542–553 of the Code.

"***Ballot***" shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims in each Impaired Class of Claims that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

"***Ballot Deadline***" shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

"***Business Day***" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Florida are authorized or required to close.

"***Case***" shall mean this Chapter 11 Case No. 15-10317-PGH, pending before the United States Bankruptcy Court for the Southern District of Florida.

"***Cash***" shall mean legal tender of the United States of America.

"***Claim(s)***" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"***Claims Bar Date***" shall mean **May 11, 2015**, the last date for creditors, except a governmental unit, to file Proofs of Claim in the Case.

"***Class***" shall mean a group of Claims classified together pursuant to Article IV of the Plan.

"***Code***" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"***Collateral***" shall mean any property or interest in Property of the Estate if the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

"***Confirmation***" shall mean the entry by the Court of the Confirmation Order.

"***Confirmation Date***" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"***Confirmation Hearing***" shall mean the date this Court schedules the hearing to consider confirmation of the Plan.

"***Confirmation Order***" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in a form and substance satisfactory to the Proponent.

"***Court***" **and/or** *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"***Creditor***" shall mean any Person holding a Claim, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"*DB*" shall mean The City of Delray Beach, a secured creditor of the Debtor.

"***Debtor***" shall mean Auburn Trace, Ltd.

"***Disputed Claim***" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"***Disputed Claims Reserve***" shall have the meaning set forth in Section 5.03 of the Plan.

"***Distribution(s)***" shall mean funds to be paid to holders of Claims pursuant to Article II, Article IV and Article V of the Plan.

"***Distribution Date***" shall mean the dates upon which Distributions may be made pursuant to Article V of the Plan.

"***Docket***" shall mean the docket maintained in this Case by the Clerk of the Court.

"*Effective Date*" shall mean the fifteenth (15) day after the entry of the Confirmation Order.   In the event the Confirmation Order is stayed pending appeal, the Effective Date shall be the later of fifteen (15) days after the entry of an Order either lifting the stay or affirming the Confirmation Order.

"***Estate***" and/or "***Property of the Estate***" shall mean the Estate created in this Case pursuant to section 541 of the Code.

"*Equity Interest" or "Interest"* shall mean any ownership or equity interest in the Debtor, including without limitation, interests in any share of preferred stock, common stock or other instrument evidencing ownership interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

"***Executory Contract***" shall mean a contract or unexpired lease to which the Debtor is a party and that is executory within the meaning of section 365 of the Code.

"***Filing Date***" shall mean January 7, 2015, the date on which the Debtor commenced this Case by filing a voluntary petition under Chapter 11 of the Code.

"***Final Order***" shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

"***General Unsecured Claim(s)***" shall mean any Claim against the estate of the Debtor other than an Administrative Claim, a Secured Claim, a Secured Taxing Authority Claim, an Unsecured Priority Tax Claim, or a Priority Claim.

"***Governmental Claims Bar Date***" shall mean **July 6, 2015**, the last date for governmental unit claimants to file Proofs of Claim in the Case.

"***Impaired***" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

"***Initial Distribution Date***" shall be the Effective Date, unless otherwise provided for in the Plan.

"***Insider(s)***" shall mean those Persons defined in section 101(31)(B) of the Code.

"***Late Filed Claim***" shall mean a Claim filed after the Claims Bar Date or Governmental Claims Bar Date, whichever is applicable.

"***Lien(s)***" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

"***Liquidated Debtor***" shall mean Auburn Trace, Ltd., as liquidated, on or after the Effective Date.

"***Person***" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"***Petition Date***" shall mean the Filing Date.

"***Plan***" shall mean this Plan of Liquidation in the present form or as it may be modified, amended, or supplemented from time to time.

"***Plan Document(s)***" shall mean the document(s) to be filed as a part of the Plan Supplement, if needed.

"***Plan Supplement***" shall mean the document(s) to be filed as part of the Plan to include the Assumption List, if any, and any other necessary Plan modifications or clarifications prior to the Confirmation Hearing.

"***Post-Petition***" shall mean a date on or after the Petition Date.

"***Post-Petition Interest***" shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

"***Prepetition***" shall mean prior to the Petition Date.

"***Priority Claim***" shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

"***Priority Tax Claim***" shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"***Professional***" shall mean any professional employed in this Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

"***Property of the Estate***" shall mean the property defined in section 541 of the Code.

"***Proponents***" shall mean the Debtor and DB.

"***Real Property***" shall mean the 152 unit apartment building and freestanding commercial building located at 625 Auburn Circle W., Delray Beach, Florida 33444.

"***Rejected Contract***" shall mean an Executory Contract that is rejected at any time during this Case or pursuant to Article VI of the Plan.

"***Rejection Claim***" shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

"***Rules***" shall mean the Federal Rules of Bankruptcy Procedure.

"***Sale Motion***" shall mean a motion or motions seeking, subject to the terms of the Plan, approval of a sale of the Debtor's Real Property and any other Assets of the Debtor free and clear

of all liens, claims, encumbrances and interests, authorization of the assumption and assignment of certain Executory Contracts, and related relief, which the Debtor will file prior to the Confirmation Hearing.

***"Sale Proceeds"*** shall mean those proceeds paid to the Estate from the sale of the Debtor's Real Property and any other assets of the Debtor in accordance with the provisions of this Plan, less any reasonable related closing costs, and any amount required as a cure payment for the assumption and assignment of an Executory Contract, if required and if any.

"***Schedules***" or "***Amended Schedules***" shall mean the Schedules and Amended Schedules of assets and liabilities filed or which may be filed by the Debtor with the Court in this Case.

"***Section***" shall mean a numbered subsection of any Article of the Plan.

"***Secured Claim(s)***" shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"***Secured Creditor(s)***" shall mean the holder of a Secured Claim.

"***Substantial Consummation***" shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

"***Unimpaired***" shall mean an Allowed Claim that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

"***U.S. Trustee's Fees***" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

"***Rules of Construction and Interpretation***"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS:
### ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS
### AND UNITED STATES TRUSTEE'S FEES

The following Allowed Administrative Claims, Allowed Priority Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

### 2.01    Allowed Administrative Claims

As of the date of this filing, the Debtor estimates that as of the Confirmation Hearing the Allowed Administrative Claims will not exceed $65,000 over and above the Debtor's bankruptcy counsel's initial retainer.  Upon the closing of the sale of Real Property pursuant to the terms of the agreement reached with DB set forth herein and after the payment of any real estate taxes, the brokerage commission, and any other closing costs, the Sale Proceeds, along with the Debtor's cash on hand on which DB has a lien, shall be used to pay the Court approved Administrative Expenses of professionals in an aggregate amount not to exceed Sixty-five Thousand Dollars ($65,000.00) (the "**Professional Fees Carve-out**"), which includes the Court approved administrative expenses of the Debtor's bankruptcy counsel, Shraiberg, Ferrara & Landau, P.A., the Debtor's accountant, Dauby, O'Connor & Zaleski, LLC.  Provided that the Sale Proceeds exceed Nine Million and Fifty Thousand Dollars ($9,050,000) after payment of any real estate taxes, brokerage commissions, any other closing costs, and the Professional Fees Carve-out, the remaining Sale Proceeds, along with the Debtor's cash on hand on which DB has a lien, in excess of the foregoing shall next be used to fund any additional Court approved administrative expenses.  In the event no offers are received to purchase the Real Property for the sum of at least $9,050,000 during the ninety (90) day period after Marcus & Millichap Inc. was retained by the Bankruptcy Court and DB credit bids the amount of its Allowed Secured Claims, Brian Hinners and Thomas Hinners shall pay the Allowed Administrative Claims referenced herein.

### 2.02    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in full on the Effective Date.  Allowed Priority Tax Claims shall be paid with funds from the Cash held by the Debtor during the pendency of the Case.  The Debtor does not anticipate any Allowed Priority Tax Claims.

### 2.03    United States Trustee's Fees.

The Liquidated Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through the Effective Date.  Such sums shall be paid with the Cash held by the Debtor.  The Liquidated Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-Effective Date periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Liquidated Debtor shall provide to the United States

Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods. Such sums shall be paid with Cash held by the Debtor during the pendency of the Case or from the Sale Proceeds. The Debtor estimates the United States Trustee Fee based on the sale of the Real Property will total approximately $13,000.

**ARTICLE III**

**CLASSIFICATION OF CLAIMS**

For purposes of this Plan, the Classes of Claims against or in the Debtor shall be as follows:

| **Class** | **Description** | **Status** | **Voting Status** |
|---|---|---|---|
| Class 1 | Allowed Secured Tax Claims | Unimpaired | No. Deemed Accepted. |
| Class 2 | Allowed Secured Claim of DB as it relates to the First Position Mortgage on the Real Property | Impaired | Yes |
| Class 3 | Allowed Secured Claim of DB as it relates to the Second Position Mortgage on the Real Property | Impaired | Yes |
| Class 4 | Allowed Secured Claim of US Small Business Administration | Unimpaired | Yes |
| Class 5 | Allowed General Unsecured Claims and Allowed General Undersecured Claims | Impaired | Yes |
| Class 6 | Allowed Equity Interests | Impaired | No. Deemed Rejected. |

**ARTICLE IV**

**TREATMENT OF CLASSIFIED CLAIMS**

**4.01    Class 1 - Allowed Secured Tax Claims**

(a)    <u>Description</u>.    Class 1 consists of the Allowed Secured Tax Claims on the Real Property in the amount of approximately $17,941.82 (POC No. 7), $152,283.40 (POC No. 6), and $145.40 for 2014 and $16,805.09, $138,482.41 and $129.83 for 2015; and the tangible personal property Allowed Secured Tax Claims in the amount of $3,134.46 for 2014 and $3,011.71 for 2015.

(b)    <u>Treatment</u>.    Except to the extent that the holders of the Allowed Secured Tax Claims have been paid by the Debtor or some other party prior to the Effective Date or agrees to a different treatment, the Class 1 Claimholders shall be paid 100% of the Allowed Amount of the Claim upon the Closing from the Sale Proceeds. Notwithstanding the foregoing, in the event, DB

credit bids the amount of its Allowed Secured Claims against the Real Property, subject to higher and better offers, because no prospective purchaser offers to purchase the Real Property for the sum of at least $9,050,000 during the ninety (90) day period after Marcus & Millichap Inc. was retained by the Bankruptcy Court, the Debtor's Cash on hand as of the date of this filing shall be used to fund 100% of the Allowed Secured Tax Claims to permit DB to obtain the Real Property with the real estate taxes paid.

(c)    Impairment.    The Class 1 Claim is Unimpaired and the Class 1 Claimholder shall be deemed to have accepted the Plan.

### 4.02    Class 2 - Allowed Secured Claim of DB as it relates to the First Position Mortgage on the Real Property

(a)    Description.    Class 2 consists of the Allowed Secured Claim of DB as it relates to the first position mortgage on the Real Property in the amount of approximately $5.1 million as of August 11, 2015, plus default interest due plus attorney fees, costs and penalties as allowed by the loan documents that continues to accrue (Acct. No. 752147203101).  This loan was formerly serviced by Orion Bank, and, then Iberia Bank.  During the pendency of this case, DB purchased Iberia Bank's Claim.  DB is also the holder of the Allowed Class 3 Claim, as more particularly described below.

(b)    Treatment.    Except to the extent that the holder of the Allowed Class 2 Claim and the Allowed Class 3 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of the Allowed Class 2 Claim and the Allowed Class 3 Claim, the holder of the Allowed Class 2 Claim and the Allowed Class 3 Claim shall receive a minimum payment of $9,050,000 from the sale of the Debtor's Real Property and any and all other Property of the Estate.  In addition, until paid in full, the holder of the Allowed Class 2 Claim and Class 3 Claim shall receive fifty percent (50%) of the net proceeds of the sale of the Real Property over and above $9,050,000 and any and all other Property of the Estate, until both the Allowed Class 2 Claim and the Allowed Class 3 Claim have been paid in full including all default interest due, plus, attorney fees, costs and penalties as allowed by the loan documents that continues to accrue.  In the alternative, the holder of the Allowed Class 2 Claim and the Allowed Class 3 Claim shall be entitled to a credit bid of $9,050,000 in the sale of the Debtor's Real Property and any other Property of the Estate.  In the event that the holder of the Allowed Class 2 Claim and the Allowed Class 3 Claim is the successful purchaser for the sale of the Debtor's Real Property, all Cash on hand will be used first to satisfy all Secured Tax Claims.   The agreement to defer payment of a portion of the Allowed Class 2 Claim and the Allowed Class 3 Claim and in providing a portion of the net proceeds of the sale described herein to the Debtor to satisfy its other Claims prior to payment of the two senior liens described herein, represents a compromise and settlement.

The holders of the Allowed Class 2 Claim and the Allowed Class 3 Claim retain any and all Liens on the Debtor's Real Property and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payment described herein, the holders of the Allowed Class 2 Claim and the Allowed Class 3 Claim shall release its liens on the Real Property.

(c)    <u>Impairment</u>.    The Class 2 Claim is Impaired and the Class 2 Claimholder is entitled to vote to accept or reject the Plan.

**4.03    <u>Class 3 - Allowed Secured Claim of DB as it relates to the Second Position Mortgage on the Real Property</u>**

(a)    <u>Description</u>.    Class 3 consists of the Allowed Secured Claim of DB as it relates to the second position mortgage on the Real Property in the amount of approximately $4.3 million as of August 11, 2015, plus default interest due plus attorney's fees, costs, and penalties as allowed by the loan documents through Confirmation and then shall accrue interest at its non-default rate of interest.

(b)    <u>Treatment</u>.    The treatment for the holder of the Allowed Class 3 Claim is described fully above with the treatment of the Allowed Class 2 Claim.  The holder of the Allowed Class 3 Claim shall receive no other distribution other than as described in Section 4.02 above.

The holders of the Allowed Class 2 Claim and the Allowed Class 3 Claim retain any and all Liens on the Debtor's Real Property and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payment described herein, The holders of the Allowed Class 2 Claim and the Allowed Class 3 Claim shall release its liens on the Real Property.

(c)    <u>Impairment</u>.    Class 3 Claim is Impaired and the Class 3 Claimholder is entitled to vote to accept or reject the Plan.

**4.04    <u>Class 4 - Allowed Secured Claim of US Small Business Administration</u>**

(a)    <u>Description</u>.    Class 4 consists of the Allowed Secured Claim of US Small Business Administration as it relates to the third position mortgage on the Real Property in the amount of $199,514.54.

(b)    <u>Treatment</u>.    Except to the extent that the holder of the Allowed Class 4 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of the Allowed Class 4 Claim, the Class 4 Claimholder shall be paid up to the Allowed Amount its Claim from the 50% DB Payment.

US Small Business Administration shall retain any and all Liens on the Real Property and other rights until such time as the proposed payment herein have been satisfied.  Upon completion of the payment described herein, US Small Business Administration shall release its Liens on all property retained by the Debtor, including the Real Property.

(c)    <u>Impairment</u>.    Class 4 is Impaired and is entitled to vote to accept or reject the Plan.

**4.05    Class 5 - Allowed General Unsecured Claims and Allowed General Undersecured Claims.**

(a)    <u>Description</u>.    Class 5 consists of the Allowed General Unsecured Claims and Allowed General Undersecured Claims.   As reflected in the Claims Analysis attached as **Exhibit "B"** to the Disclosure Statement, the Debtor estimates the aggregate non-Insider Allowed General Unsecured Claims (excluding any Allowed General Undersecured Claim of the US Small Business Administration) total approximately $50,590.63.

The Debtor estimates the Insider Claims of Auburn Group Company, LLC and Florida Affordable Housing, Inc. total approximately $562,966.54 in the aggregate.  Pursuant to the terms of the agreement reached with DB, upon Confirmation of this Plan, the holders of the Insider Claims have agreed to subordinate payment of their respective Claims until all Allowed Administrative Claimholders have been paid in full, holders of Claims in Classes 1 and 4 have been paid in full, DB has been paid the sum of $9,050,000, and holders of Allowed non-Insider Claims in Class 5 have paid in full.  The agreement by Florida Affordable Housing, Inc. and Auburn Group Company, LLC to subordinate their Claims is expressly conditioned upon the Confirmation of this Plan.

(b)    <u>Treatment</u>.  Except to the extent that the holder of an Allowed non-Insider Class 5 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of their respective Allowed Class 5 Claims, the Allowed non-Insider Class 5 Claimholders shall be paid up to the Allowed Amount of their their respective Allowed Claims from the 50% DB Payment less the amounts paid to the holder of the Allowed Class 4 Claim.

In the event the Allowed non-Insider Class 5 Claims are paid in full as set forth above, the remaining Cash on hand plus the remaining net Sale Proceeds will be split equally between (i) DB; and (ii) the Insider Claimholders of Auburn Group Company, LLC and Florida Affordable Housing, Inc. (the "**Insider Claims**") until the Insider Claims have been paid in full.

(c)    <u>Impairment</u>.   The Class 5 Claims are Impaired and Class 5 Claimholders are entitled to vote to accept or reject the Plan.

**4.06    Class 6 - Allowed Equity Interests**

(a)    <u>Description</u>.    Class 6 consists of the Allowed Equity Interests in the Debtor, which includes interests in any share of preferring stock, common stock or other instrument evidencing ownership interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

(b)    <u>Treatment</u>.   In the event the holders of Allowed Claims in Sections 4.04 and 4.05 of the Plan (Classes 4 and 5) have been paid in full, holders of Allowed Equity Interests shall be paid from the 50% DB Payment.

(c)    <u>Impairment</u>.    The Class 6 Claims are Impaired, but Class 6 Claimholders are not entitled to vote to accept or reject the Plan, as Class 6 Claimholders shall be deemed to have rejected the Plan.

**ARTICLE V**
**PROVISIONS REGARDING VOTING AND DISTRIBUTIONS**
**UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND**
**TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED**
<u>**ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS**</u>

**5.01    <u>Voting of Claims</u>**

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.  Holders of claims valued at an unknown amount shall not be entitled to vote on Debtor's Plan.

**5.02    <u>Method of Distribution Under the Plan</u>**

(a)    Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by the Liquidated Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the date(s) provided in the Plan unless the Debtor or Liquidated Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made by the Liquidated Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Liquidated Debtor to any holder of a Claim unless a request therefor is made in writing to the Liquidated Debtor, or unless the Distribution is a final Distribution.

(f)    When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual Distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 5.03(f) of the Plan.

(g)    Any distributions of Cash or other property under the Plan that are unclaimed for a period of six (6) months after the date of the Distribution shall constitute unclaimed funds and any entitlement of any holder of any Claim to such Distribution(s) shall be extinguished and forever barred.

(h)    Unless otherwise provided herein, all initial Distributions and deliveries to be made on the Effective Date shall be made on the initial Distribution Date.  Any subsequent distributions shall be made in accordance with the terms set forth in the Plan.

(i)    At the close of business on the Effective Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the date the Debtor; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Effective Date.  The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Effective Date.

### 5.03    Resolution of Disputed Claim

**This Plan is a resolution of a dispute as to whether the $1,000,075 in settlement proceeds to be paid to Village at Delray GP, LLC to resolve the civil action filed in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida styled as follows: *Auburn Development, LLC v. Village at Delray, Ltd.*, Case No. 2014-CA 008414-AA[1] is an intercompany receivable of the Debtor.  The Debtor believes it is not Property of the Estate and DB believes that it is.  Through this liquidating Plan, the Debtor agreed to liquidate its property instead of pursuing the traditional reorganization plan.  <u>In exchange for the Debtor's agreement to liquidate its property pursuant to the terms herein, the Confirmation Order shall include a finding that the $1,000,075 in settlement proceeds is not Property of the Estate.</u>**

### 5.04    Distributions Withheld for Disputed General Unsecured Claims

(a)    **Establishment and Maintenance of Reserve**

On the initial Distribution date and any subsequent Distribution date, the Liquidated Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 5.08 of the Plan (the "**Disputed Claims Reserve**").

---

[1]    The parties to this lawsuit are as follows:  (i) Auburn Development, LLC is the plaintiff; (ii) Auburn Development, LLC, Auburn Management, Inc., Village at Delray GP, LLC and Brian Hinners are counter-defendants; and (iii) the Village at Delray, Ltd. is the defendant and counter-plaintiff.  The Debtor was not a party to the foregoing lawsuit.  *See* The Disclosure Statement and the Motion to Approve this Settlement Agreement [ECF No. 61] for additional information relating to same.

(b)      **Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Liquidated Debtor for the benefit of the potential recipients of such Cash and shall not constitute property of the Liquidated Debtor.

(c)      **Distributions Upon Allowance of Disputed General Unsecured Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Distribution date shall receive distribution(s) of Cash and any other consideration from the Disputed Claims Reserve from the Liquidated Debtor within ten (10) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

(d)      **No Surplus Distributions to Holders of Allowed General Unsecured Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Liquidated Debtor.

(e)      **Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Liquidated Debtor on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Liquidated Debtor from the amount of Cash on hand as of the Effective Date.

**5.05**    **Procedures for Allowance or Disallowance of Disputed Claims**

(a)      **Objections to and Resolution of Administrative Claims and General Unsecured Claims**

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Liquidated Debtor shall have the exclusive right to make and file objections to Claims subsequent to the Effective Date.  All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Liquidated Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court.  Unless otherwise ordered by the Court, the Liquidated Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court.  The Liquidated Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business.  The Estate shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

**(b)        No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim  (in whole or in part).

**(c)        Disallowed Claims**

All Claims held by Persons against whom the Debtor or Liquidated Debtor has commenced an Action under sections 522(f), 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Section of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

**5.06        Disbursing Agent**

The Liquidated Debtor, or such Person(s) as the Liquidated Debtor may designate with approval of the Court, will act as disbursing agent under the Plan with respect to all Distributions to holders of Claims, and will make all Distributions required to be distributed under the applicable provisions of the Plan.  Any disbursing agent may employ or contract with other entities to assist in or make the Distributions required by the Plan.  Each disbursing agent will serve without bond, and each disbursing agent, other than the Liquidated Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Liquidated Debtor on terms acceptable to the Liquidated Debtor.  The Liquidated Debtor shall hold all reserves and accounts pursuant to the Plan and the Disputed Claims Reserve.

**5.07        Setoffs and Recoupment**

The Debtor may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim.

**5.08        Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, the Debtor or Liquidated Debtor, as applicable, shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtor and the Liquidated Debtor may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor or Liquidated Debtor previously objected to such Claim or whether the Court has ruled

on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidated Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objections, estimations, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 5.09    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claimholder shall have recourse against the disbursing agent, the Debtor, the Liquidated Debtor, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 5.10    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Liquidated Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 5.11    Post-petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

### 5.12   Unclaimed Funds

Any funds unclaimed for the period described in paragraph 5.02(g) above shall be forfeited by the holder and will be re-deposited in the Liquidated Debtor's account to be paid over to the Liquidated Debtor.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.01   Assumption or Rejection of Executory Contracts and Unexpired Leases

**Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Liquidated Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) that is listed on an assumption list (the "**Assumption List**") which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Ballot Deadline, if appropriate; *provided, however*, that the Debtor or Liquidated Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtor or Liquidated Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtor or Liquidated Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Liquidated Debtor have any liability thereunder.

Holders of Claims resulting from rejection pursuant to Section 365 of the Bankruptcy Code shall have thirty (30) days after the earlier of (i) the Effective Date or (ii) the date of an Order granting rejection within which to file any Claim based on such rejection.  **THE FAILURE TO FILE SUCH REJECTION CLAIMS SHALL FOREVER BAR SUCH CLAIMS AND THE HOLDERS THEREOF SHALL NOT BE ENTITLED TO ANY DISTRIBUTION UNDER THIS PLAN.**

# ARTICLE VII

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

### 7.01  General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Liquidated Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 7.02    Funding of the Plan and the Sale of the Real Property

The Plan will be funded primarily by the Sale Proceeds received from the sale of the Real Property and any Cash held by the Debtor as of the date of the Confirmation Hearing.  As of the date of this filing, the Debtor has in excess of $400,000 in Cash on hand.

After consultation with the Debtor's broker, Marcus & Millichap Inc., the Debtor proposes to sell the Real Property, along with any Property of the Estate by straight sale instead of by auction because the Debtor anticipates a sale by auction would result in a lower final purchase price.  As it relates to this particular Real Property, any prospective purchaser of same would first have to get Florida Housing approval, which take time and is required per the Land Use Restriction Agreement and Florida Housing would not approve the potential bidders prior to the sale.  This required process would make an auction very difficult because there would be no time for the buyer to get approved, which would result in a contingency giving the prospective buyer an "out".  Additionally, the new management company would need to be approved.  The Real Property also has physical issues and most prospective purchasers may want to have time to assess them.  If not, it may impact the amount they would want to bid as an inspection period is not feasible with an auction.  Lastly, even if there were not approvals required, the Debtor anticipates that an auction would ultimately net less dollars since this is a very unique asset with untypical long term (45 year) income and rent restrictions, which significantly lowers the pool of prospective buyers.

Based on the anticipated Sale Proceeds and the Debtor's Cash on hand, the Debtor asserts that it is able to perform all of its obligations under the Plan, and as such, the Debtor's Plan satisfies section 1129(a)(11) of the Code.

### 7.03    The Liquidated Debtor

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date of the Plan, all Assets of the Debtor shall be vested in the Liquidated Debtor.  The Liquidated Debtor shall assume all of the Debtor's rights, obligations and liabilities under the Plan.  The primary purposes of the Liquidated Debtor will be to:  i) perform all actions necessary to wind down the business and liquidate the Real Property along with any other Assets of the Liquidated Debtor; ii) except as provided for in the Plan, prosecute all Actions and objections to Claims, if in the best interest of the Debtor's estate and its creditors; iii) close the Bankruptcy Case; iv) pay the Liquidated Debtor's U.S. Trustee's Fees and expenses relating the administration of the Liquidated

Assets; v) prepare and file post-confirmation quarterly reports; and vi) do anything necessary, related or incidental to the foregoing.

### 7.04    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the Board of the Debtor or the Liquidated Debtor shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the laws of the State of Florida, and other applicable corporate law of the jurisdiction in which the Liquidated Debtor is organized, without any requirement or further action by the Board of Directors of the Debtor or the Liquidated Debtor.  On the Effective Date, or as soon thereafter as is practicable, the Liquidated Debtor shall, if required, file its amended organizational documents with the secretary of the state of the state in which the Liquidated Debtor is incorporated.

### 7.05    Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

### 7.06    Effective of Instruments and Agreements

On the Effective Date, all agreements entered into or documents issued pursuant to the Plan, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to be effective simultaneously.

### 7.07    No Change of Control

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 7.08    Corporate Existence and Dissolution of Debtor

Except as otherwise provided in the Plan, the Liquidated Debtor shall continue to exist after the Effective Date with all powers of a limited partnership under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law.  Following the Effective Date, the Liquidated Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Rules or by the Court, subject only to the terms and conditions of the Plan and Confirmation Order.  The Liquidated Debtor shall be administratively dissolved upon performing all actions necessary to wind down the business and administrate the liquidated Assets.  The dissolution of the Debtor shall be effective after the Confirmation Order is a Final Order and the Debtor files a certificate of dissolution (or its equivalent) with the secretary of state or similar official of the jurisdiction of the Debtor's organization.  Upon the filing of the certificate of the dissolution (or its equivalent), each of the manager and officers of Debtor shall be deemed to have resigned from all of their respective positions with the Debtor.

### 7.09    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 7.10    Revesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtor shall revest in the Liquidated Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims, except as otherwise provided in the Plan or the Confirmation Order.

### 7.11    Release of Debtor

*The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, DB, or any of the Assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against and Equity Interest in the Debtor and/or DB shall be satisfied and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Liquidated Debtor, its successors, DB, or their Assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a Proof of Claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.  Notwithstanding the foregoing, nothing in the Plan shall release, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and/or DB and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.*

### 7.12    Injunction Related to Release

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor and DB, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any Action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor and DB, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors*

*of the Debtor (including, without limitation, the Liquidated Debtor) and their respective properties and interests in property.*

### 7.13    Release by Holders of Impaired Claims

*This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of Action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtor may have against the Debtor and/or DB. In consideration of the obligations of the Debtor, the Liquidated Debtor, and DB under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against or Equity Interest in the Debtor and/or DB shall be deemed to forever release and waive all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of Action and liabilities (other than the rights to enforce the Debtor's or the Liquidated Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 7.13, the Plan, or the Confirmation Order shall release any Claim or causes of Action for gross negligence or willful misconduct.*

### 7.14    Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any Actions to interfere with the implementation or consummation of the Plan, except with respect to Actions any such entity may take in connection with the pursuit of appellate rights.*

**ARTICLE VIII**
**LIQUIDATION ANALYSIS**

A plan proponent must demonstrate as a condition of confirmation, that each impaired Class of Creditors will receive as much as it would receive in a Chapter 7 proceeding. A plan proponent must also demonstrate that the plan is "feasible," i.e., that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

### 8.01    Liquidation Analysis

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery

on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

If this case was to be converted to Chapter 7 liquidation, a trustee would be appointed to marshal and liquidate the assets of the Debtor.  A trustee would, in all likelihood, retain counsel, which would add additional administrative expenses.  Substantial fees could be incurred in obtaining familiarity with the Debtor's Assets, liabilities, and their dealings.  The Debtor does not believe that a subsequently appointed Chapter 7 trustee would be able to liquidate the Debtor's Assets for more than what the Debtor could collect, and, the Debtor has initiated its efforts to liquidate substantially all of its Assets.  Due to the significant additional administrative expenses that would be incurred if these cases were converted to Chapter 7, the Debtor submits that holders of Allowed General Unsecured Claims stand to gain more benefit in the event this proceeding is not converted to Chapter 7.

## ARTICLE XI

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 9.01    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.04 of the Plan:

(i)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor, the Liquidated Debtor, and its respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(ii)     All exhibits to the Plan, including those to be contained in any Plan Supplement, shall be in form and substance reasonably acceptable to the Debtor and approved by the Court;

(iii)     The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iv)     The Order(s) approving the Sale Motion shall be in form and substance reasonably acceptable to the Debtor;

(v)     The Order(s) approving the Sale Motion shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(vi)     The statutory fees owing to the United States Trustee shall have been paid in full; and

(vii)    All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

**9.02**    **Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 9.04 of the Plan:

(i)    The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(ii)    The statutory fees owing to the United States Trustee shall have been paid in full;

(iii)    All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

(iv)    The Debtor's initial Plan payment is paid to all Classes entitled to a payment upon the Effective Date.

**9.03**    **Effect of Failure of Conditions**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the release of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

**9.04**    **Waiver of Conditions**

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.02 of the Plan.  The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

# ARTICLE X

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

a.    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

c.    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims or Claims;

d.    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

e.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

f.    to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

g.    to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the plan supplement, or any order of the Court, including, without limitation, the Confirmation Order;

h.    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

i.    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

j.    to recover all Assets of the Debtor and Property of the Estate, wherever located;

k.    to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

l.    to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

m.  to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

n.  to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

o.  to hear any other matter not inconsistent with the Code; and

p.  to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Liquidated Debtor under applicable environmental laws.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### 11.01   Effectuating Documents and Further Transactions

The Debtor or Liquidated Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 11.02   Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale of the Real Property pursuant  to the terms of the anticipated Sale Motion and subsequent order approving same, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.03   Authorization to Request Prompt Tax Determinations.

The Liquidated Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

**11.04    Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Liquidated Debtor shall, without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Liquidated Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**11.05    Payment of Statutory Fees**

The Liquidated Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Liquidated Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

**11.06    Amendment or Modification of Plan**

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

**11.07    Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.08    Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**11.09    Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, and their respective successors and assigns, including, without limitation, the Liquidated Debtor.

**11.10    Notices**

All notices, requests and demands to or upon the Debtor or the Liquidated Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Liquidated Debtor:**

Auburn Trace, Ltd.
c/o Brian J. Hinners, President
777 E. Atlantic Avenue, Suite 200
Delray Beach, Florida 33483

**With a copy to:**

Shraiberg, Ferrara & Landau, P.A.
Attention:  Bradley S. Shraiberg, Esq.
2385 NW Executive Center Dr., Suite #300
Boca Raton, Florida 33431

If to DB:

The City of Delray Beach
c/o Robert C. Furr, Esquire
FURR AND COHEN, P.A.
2255 Glades Rd. Suite 337W
Boca Raton, Florida 33433

**11.11    Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and

obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 11.12    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtor or the Liquidated Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 11.13    Section 1125(e) of the Code

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.

### 11.14    Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11.15    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 11.16    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 11.17    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 11.18    Final Decree

Once there has been Substantial Consummation of the Plan, the Liquidated Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 11.19   Inconsistency

In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 11.20   No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 11.21   Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 11.22   Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 11.23   No Penalty for Prepayment

Neither the Debtor nor the Liquidated Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any Claim treated under this Plan.

### 11.24   Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 11.25   Remedy of Defects

After the Effective Date, the Liquidated Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Liquidated Debtor.

*[Remainder of Page Intentionally Left Blank]*

# ARTICLE XII
## CONCLUSION

The aforesaid provisions shall constitute the Plan of Liquidation of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Liquidated Debtor and all Creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Code.


**LIQUIDATED DEBTOR:**

**AUBURN TRACE, LTD.**

By: _____
        Brian J. Hinners, President of
        Auburn Trace Joint Venture

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this 17th day of November, 2015.

Respectfully submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com

By:    /s/ Bradley S. Shraiberg
       Bradley S. Shraiberg
       Florida Bar. No. 121622
       Lenore M. Rosetto Parr
       Florida Bar No. 064448